UNITED STATES of America, Appellee,

v.

Don Caswell WISDOM, Appellant.

No. 75–1756.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1976.

Decided April 28, 1976.

R. Thomas Day, Asst. Federal Public Defender, Kansas City, Mo., for appellant; David R. Freeman, Federal Public Defender, Kansas City, Mo., on brief.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee; Bert C. Hurn, U. S. Atty., Kansas City, Mo., on brief.

Before BRIGHT and HENLEY, Circuit Judges, and REGAN,* District Judge.

HENLEY, Circuit Judge.

Don Caswell Wisdom, defendant below, appeals from his conviction of having unlawfully sent through the mails in violation of 18 U.S.C. § 1716(a) a package containing an explosive device with the intent to kill or injure the addressee of the package, specifically Stephen Burgess of Columbia, Missouri. Following a jury finding of guilt, the trial judge [1] sentenced the defendant to imprisonment for a term of four years but with the question of his parole eligibility being left to the discretion of the Parole Board as provided by 18 U.S.C. § 4208(a).

Section 1716(a) provides that explosive devices, inflammable materials and certain other items are non-mailable. If a person wilfully mails a package containing non-mailable material, he is guilty of a misdemeanor even though he had no intention of killing anyone or injuring any person or property. But, if he wilfully mails the package with the specific intent of killing or injuring another or of damaging the mails or property, he is guilty of a felony and may be punished by a fine of not more than $10,000.00 or by imprisonment for not more than twenty years, or both. The defendant was indicted on a felony charge, and that charge included the lesser misdemeanor offense that has been mentioned.

The defendant admits that he prepared the package referred to in the indictment on November 25, 1974, and that he mailed it to Burgess from Gurley, Nebraska late on the night of the date just mentioned. And the defendant admits that the package contained non-mailable material. He contends, however, that on the crucial issue of his intent when he mailed the package the government failed to make a submissible case, and that as far as the felony charge against him was concerned, he was entitled to a judgment of acquittal. Certain other contentions will be mentioned in due course.

The facts in the case, apart from the matter of the defendant's intent, are essentially undisputed, and many of them were covered by a stipulation that is not challenged here.

In the fall of 1974 defendant was a single man about thirty-eight years of age and with a substantial amount of college education. He was knowledgeable in the field of electrical wiring and had had a good deal of experience with explosives.

Throughout 1973 and most of 1974 defendant had been living in Evergreen, Colorado in a common law relationship with a woman named Pamela Zimbrick. In October, 1974 Zimbrick and a female companion went on a rather extended vacation. On their return journey they spent two nights in the home of Burgess who is a married man and the father of a young daughter. Apparently, Burgess had been acquainted closely with Zimbrick in years prior to his marriage. On the second night of the visit just mentioned Burgess and Zimbrick had sexual relations after Mrs. Burgess had gone to bed.

Apparently, prior to the Zimbrick vacation relations between her and the defendant had begun to deteriorate, and when she got back to Colorado on November 1, 1974 she told the defendant that she wanted him to leave the apartment that they had been occupying together. He complied with her request, but it seems that he saw her from time to time between that date and the time at which he prepared and mailed the package.

Defendant came to the conclusion that Zimbrick and Burgess had had relations, and that Burgess was planning to visit Zimbrick in Colorado over Thanksgiving. Defendant became depressed and was obviously jealous.

On or shortly before November 25, which was the Monday before Thanksgiving, defendant decided that he would mail a package to Burgess that would contain what

---

* The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri, sitting by designation.

[1]. The Honorable Elmo B. Hunter, United States District Judge.

would at least appear to be a bomb, and he admits that he intended to give Burgess a severe fright, and that he prepared a rather elaborate device to achieve that purpose.

The device contained in the package consisted principally of a one gallon can that had been filled at least partially with gasoline which when mixed with air is a highly explosive substance. The package also contained fragments of broken glass which would have been projected out of the package had an explosion taken place.

Inserted into or through the opening at the top of the can was a plastic bag into which had been placed the electrical coil of a cigarette lighter and a number of match heads. Attached to the coil were two wires that were in turn connected with three six-volt batteries arranged end to end. The ends of the wires were placed in contact with two ordinary mousetraps which were arranged in such a way that if they were set when an attempt was made to open the package, they would spring and close on the wires, thus completing an electrical circuit which would heat the lighter coil with the result that the match heads would ignite and cause the can to explode. the device was completed by screwing the can's cap down over the plastic bag and securing the cap in place.

The device was put into a cardboard box. Attached to this box was a greeting card which contained the suggestion that Burgess open the package in private as he was going to get "the surprise of his life." The box was taped shut and was then wrapped in brown paper, addressed and mailed.

The package was received at the post office in Columbia and was taken to the Burgess home. The Burgess family was out of town, and the package was left on the front porch. When the family returned to Columbia on or about December 1, 1974 the package was discovered and carried inside.

Burgess undertook to open the package. He removed the outer wrapping and discovered the card. He then partially opened the cardboard box and observed the glass, the mousetraps, the wires and the top of one of the batteries. At this point he became alarmed and called the Columbia Police Department. Personnel of that organization notified Post Office Inspectors, demolition experts were brought into the matter, and the device was dismantled.

When the contents of the package were closely examined, it was found that the batteries were dead, and that the mousetraps were in a closed position over the wires. It was also found that the plastic bag had a hole in it, that gasoline had leaked from the can into the bag, and that the match heads were floating in the liquid. While the batteries were dead, they gave the appearance of being new (defendant testified that he bought them new on November 25, and that they were alive at that time), and there was no evidence of any leakage of electrolyte from the batteries.

While as indicated, the defendant admits that he prepared an elaborate device to frighten Burgess, he claims that the device was prepared as a "hoax bomb," that it was never designed to explode, and that the defendant took extreme precautions to prevent an explosion. He testified that before assembling the device he wired the batteries in a "dead short" position to drain the current from the batteries, and that after the current had been drained he placed the mousetraps in closed position over the wires so as to keep the electrical circuit closed and thus prevent the batteries from regaining their strength. He also testified that he filled the can to the brim with a mixture of gasoline and liquid lacquer so that a lack of oxygen would prevent an explosion; he further testified that his purpose in using the lacquer was to bring about a partial disintegration of the plastic bag so that the liquid mix in the can would enter the bag and inundate the coil and the match heads.

In making its felony case against the defendant the government relied on the admitted facts, on defendant's alleged motive to kill or injure Burgess, and on the testimony of a number of expert witnesses. The theory of the government, supported by the testimony of its experts, was that when the package was mailed, it contained

an actual bomb, designed to explode when the package was opened, and that the package would have exploded but for the fact that at some stage the plastic bag had been damaged so that gasoline leaked into the bag and rendered the match heads noninflammable. There was evidence from which it might be inferred that the can had not been filled completely with liquid as the defendant testified that it had been; there was also evidence that the liquid in the can and in the bag contained no lacquer or other foreign substance and was simply ordinary gasoline. As to the batteries, there was expert testimony to the effect that if the defendant had in fact wired them on November 25 so as to produce a dead short and had left them so wired, there would have been evidence of electrolyte leakage when the batteries were examined after the device was dismantled. As to the fact that the batteries were dead when examined, there was expert testimony to the effect that if the mousetraps had sprung and closed the circuit but without producing an explosion when Burgess undertook to open the package, and if the circuit had remained closed due to the springing of the traps, the current would have been drained from the batteries in any event by the time at which they were tested some hours after the supposed springing of the traps.

At the trial of the case defendant was represented by employed counsel who, in our estimation, afforded the defendant vigorous and adequate representation. At the close of the government's evidence and again at the close of all of the evidence defense counsel moved for the entry of a judgment of acquittal on the ground that the government had failed to prove beyond a reasonable doubt that the defendant had mailed the package with intent to kill or injure Burgess. Those motions were denied.

In determining whether the government's evidence was sufficient to take the felony charge to the jury, we are required to view the evidence in the light most favorable to the government, and to give to the government the benefit of all reasonable inferences favorable to the government's case that logically may be drawn from the evidence. *United States v. Diggs,* 527 F.2d 509, 512 (8th Cir. 1975); *United States v. Shahane,* 517 F.2d 1173, 1174 (8th Cir. 1975), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975); *United States v. Powell,* 513 F.2d 1249, 1250 (8th Cir. 1975), *cert. denied,* 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77 (1975).

Additionally, we must recognize that a fact in issue in a criminal case, including criminal intent and the ultimate fact of guilt or innocence of a criminal charge, may be proved by circumstantial as well as direct evidence. The facts and circumstances relied on by the government must be consistent with guilt, but they need not be inconsistent with any other reasonable hypothesis, and it is enough to convict if the entire body of evidence is sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty. *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Shahane, supra,* 517 F.2d at 1177; *see also United States v. Kye,* 411 F.2d 120, 122 (8th Cir. 1969).

When the evidence is considered in the light of the principles just stated, we are satisfied that the government made a submissible case on the felony charge, and that the jury's verdict was amply sustained by the evidence.

The government's explosive expert, Michael L. Beckman, testified that a device prepared as a "hoax bomb" and not intended to explode will ordinarily have lacking a component part of a real bomb, whereas here all of the component parts were present. The jury had a right to accept that testimony and to conclude that if the defendant had desired to accomplish nothing but the frightening of Burgess, he would not have taken the elaborate precautions that he said he took to prepare what to all appearances was an active bomb but one that he had made sure would not explode. It would have been much simpler for him not to have put the lighter coil or the match heads in the plastic bag in the

first place, or he could have omitted some other vital but non-obvious part of the bomb, or he could have filled the can with a non-explosive substance. Moreover, the jury had a right to consider that if a person is charged with having mailed a bomb that for some reason did not explode, an obvious defense will be that he never intended for it to explode.

In connection with this appeal the defendant is represented by an Assistant Federal Public Defender for the Western District of Missouri who is serving by appointment. With commendable zeal appellate counsel has combed the record in the case searching for error and he complains that the district court committed certain errors in admitting evidence and in instructing the jury, and that the closing argument of counsel for the government was so prejudicial as to require reversal. Counsel concedes that the questions he raises here, other than the question of the sufficiency of the evidence, were not raised below; he argues, however, that the alleged errors which he seeks to bring to our attention were so prejudicial as to be noticeable here under the "plain error" doctrine set out in Fed.R.Crim.P. 52(b). We do not find error in the areas mentioned by counsel and certainly we do not find "plain error."

■ We agree with the district court that Mr. Beckman, who has been mentioned, was qualified to testify as an expert on explosives; the weight to be given to his testimony was a matter for jury consideration. Beckman was permitted to testify without objection that in his opinion the person who manufactured the bomb involved in the case intended for it to explode and that it would have exploded but for the fact that the match heads became wet due to coming in contact with the liquid gasoline. It would have been better perhaps if Beckman had not expressed his opinion in terms of "intent." For example, he could have stated that in his opinion the device that has been described was an actual bomb and that it would have exploded except for the leakage of the gasoline. As indicated, however, there was no objection to the opinion as expressed and no objection to the question that evoked the opinion, and we do not think that the question and answer were so improper or prejudicial as to call for reversal.

■ It is complained that in instructing the jury as to how intent may be proved the district court stated that "guilt" may be inferred from surrounding circumstances. From reading the paragraph of the instructions in which the word in question appears, it is obvious that the trial judge intended to say "intent" rather than "guilt," and that his use of the latter term was at worst a mere slip of the judicial tongue. When the instructions are read as a whole, as they must be, we are satisfied that the use of "guilt" in the particular context in which it was used did not mislead the jury or prejudice the defendant.

■ Nor do we find any merit in the claim that the district court erred when it told the jury that in view of the factual stipulation between the parties the defendant had stipulated that he had committed the lesser offense included in the felony charge against him. The statement of the district court was literally true, and we do not consider it to have been prejudicial. We observe in that connection that the jury was not told that if it cleared the defendant on the felony charge, it must find him guilty on the misdemeanor charge. On the contrary, it was made clear to the jury that it had a right to find the defendant not guilty on both charges.

The assignment of error based on portions of government counsel's closing argument to the jury is clearly without merit and, indeed, is insubstantial.

Affirmed.