HENLEY, Circuit Judge.
James Theodore Eagle, an Indian, appellant here and defendant below, was convicted in the United States District Court for the District of South Dakota of an assault with a dangerous weapon upon the person of James Catches, another Indian, with the assault taking place on the Pine Ridge Indian Reservation, in violation of 18 U.S.C. § 1153, as amended, and of having used a *1169 firearm in the commission of the offense in violation of 18 U.S.G- § 924(c)(1). The district court sentenced the defendant to imprisonment for three years on each of the two counts of the indictment with the sentences to be served consecutively. The defendant appeals.
We affirm the conviction and sentence on Count I, the § 1158 count. As to Count II, the § 924(c)(1) count, we reverse and remand the case with directions that Count II be dismissed.
I.
The government’s evidence at trial showed that, on the afternoon of May 17, 1975, James Catches was riding from Oglala, South Dakota to Pine Ridge, South Dakota in a car driven by Dale Janis. There were three other men in the car: Lloyd Bissonette, Maurice Waters and Ezzard Tobacco. All had been drinking to some degree on that day. The men had traveled about a mile from Oglala when they stopped, near a historical marker, to add oil to their car’s engine. The spot where they stopped was on the Reservation.
All the men were in the car, and they were about to leave the marker when a green car came weaving down the road toward them. This car stopped in the middle of the highway. Two men with rifles emerged. One of these men was identified by three of the occupants of the first car— Janis, Walters and Bissonette — as the defendant, James Eagle. Janis attempted to drive his car around the green car. As he was doing so, he heard three shots. One of the shots struck the arm of James Catches above the wrist, causing a severe wound.
The defendant presented an alibi defense. Nonetheless, the jury found him guilty on both counts. As stated, consecutive three year sentences were imposed.
Appellant subsequently moved for a new trial on the basis of newly discovered evidence. Among the grounds presented was an allegation that one of the jurors, Keith Long, had admitted that he realized during the trial that Eagle was one of the men charged with the shooting of two FBI agents at Oglala, in an unrelated incident. Appellant’s counsel filed an affidavit, in which he asserted that he learned this from Charles Dorothy, another attorney, who claimed to have spoken to juror Long.
A hearing was held on the new trial motion. Appellant moved to subpoena the jurors, but the motion was denied. Charles Dorothy did testify; he stated that Long told him that he did Realize during the trial that Eagle was connected with the FBI shootings. Dorothy said that Long did not communicate this belief to the judge or to any court official.
The government submitted the affidavit of juror Long. Long admitted that during the trial he had speculated that Eagle might be one of the men charged in the FBI deaths.[1] However, he asserted that this speculation was not discussed with any other juror, and did not affect his own decision in the case.
On this evidence, the district court denied the motion for new trial. A timely appeal was taken from both the conviction and the denial of the new trial motion.
Appellant presents these arguments for reversal: that the trial court erred in denying his motion to subpoena the jurors; that the court did not have jurisdiction of the § 924(c)(1) charge; that the evidence was not sufficient to support the verdict; and that the imposition of consecutive sentences was improper.
II.
A defendant who seeks to overturn a verdict by proof of jury misconduct must overcome two obstacles. First, he must produce evidence which is not barred by the rule of juror incompetency. Secondly, his evidence must be sufficient to prove “grounds recognized as adequate to over *1170 turn the verdict.” See Government of Virgin Islands v. Gereau, 523 F.2d 140, 148 (3d Cir. 1975), cert. denied, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976).
Appellant here has not shown an ability to pass the first obstacle. The evidence which he proposes to produce by summoning the jurors to testify would not be competent to impeach the verdict. Accordingly, we conclude that the district court acted correctly in denying the motion to subpoena the jurors, and in denying the new trial motion.
Rule 606(b) of the Federal Rules of Evidence is a codification of the common law rule relating to juror testimony.
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon his or any other juror’s mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury’s attention or whether any outside influence was improperly brought to bear upon any juror.
See generally Government of Virgin Islands v. Gereau, supra, 523 F.2d at 149; Downey v. Peyton, 451 F.2d 236, 239 (4th Cir. 1971); United States ex rel. Owen v. McMann, 435 F.2d 813, 819 (2d Cir. 1970), cert. denied, 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971). The general rule both at common law and under the Rules of Evidence is one of incompetency, with an exception made for testimony relating to extraneous information or improper influence in the jury room.
Appellant contends that Long, if subpoenaed, would testify that he realized during the trial that Eagle was connected with the FBI shootings. He contends that this realization constituted an “extraneous influence,” and that Long’s testimony is therefore competent under the exception to the general rule. He argues that he should be allowed to subpoena not only Long but also the remaining jurors to determine whether they entertained similar speculations.
Appellant’s argument ignores a crucial fact: no contention has been made that juror Long voiced his suspicions about appellant’s identity in the jury room. In fact, by affidavit Long denies mentioning his speculation. This is fatal to appellant’s position.
A central purpose of the rule of juror incompetency is the prevention of fraud by individual jurors who could remain silent during deliberations and later assert that they were influenced by improper considerations. See Mattox v. United States, 146 U.S. 140, 148, 13 S.Ct. 50, 36 L.Ed. 917 (1892). If there were no rule of incompetency, the “secret thought of one” juror would have “the power to disturb the expressed conclusions of twelve.” Id., 146 U.S. at 148, 13 S.Ct. at 52. For this reason, courts have insisted in cases of this sort that proof be limited to “overt acts which are susceptible to the knowledge of other jurors.” Gafford v. Warden, 434 F.2d 318, 320 (10th Cir. 1970); see United States v. Howard, 506 F.2d 865, 869 (5th Cir. 1975).
Appellant’s allegations do not go beyond the mental process of juror Long. Appellant has alleged no overt acts susceptible to the other jurors’ knowledge. He has thus not shown that competent evidence could be produced by summoning Long to testify, and so may not subpoena him.
Similarly, appellant has no right to subpoena the remaining jurors. He has made no specific allegations that any of them engaged in overt improper acts susceptible of proof. He clearly has no general right to subpoena the jurors in the absence of such allegations. United States v. Dye, 508 F.2d 1226, 1232 (6th Cir. 1974), cert. denied, 420 U.S. 974, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975); Smith v. Cupp, 457 F.2d 1098, 1100 (9th Cir.), cert. denied, 409 U.S. 880, 93 S.Ct. 208, 34 L.Ed.2d 135 (1972); Dickinson v. United States, 421 F.2d 630 (5th Cir. 1970).
*1171 It is clear that, in the absence of specific allegations of ability to adduce competent evidence, the district court properly denied both the motion to subpoena jurors and the motion for a new trial.
III.
Count II of the indictment is based on 18 U.S.C. § 924(c), which provides: “Whoever (1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States . . . shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than-one year nor more than ten years.” This statute creates an offense separate from the underlying felony. United States v. Howard, 504 F.2d 1281, 1286 (8th Cir. 1974); United States v. Sudduth, 457 F.2d 1198 (10th Cir. 1972). Its purpose is to prevent the carrying and use of firearms in the commission of federal felonies. See United States v. Howard, supra, 504 F.2d at 1286.
Appellant contends that although the statutory language is broad (“any felony”), Congress did not in fact intend that a prosecution for violating § 924(c)(1) would be available where the underlying felony is that charged here, an assault with a dangerous weapon in violation of 18 U.S.C. § 1153, the Major Crimes Act. We agree, and so vacate the Count II conviction.
A.
We reach this result first because § 1153 itself provides an increased penalty for use of a dangerous weapon. We are convinced that Congress did not intend § 924(c)(1) to be applicable in a case involving such a statute.[2]
We are led to this conclusion by the legislative history of § 924(c)(1). This section originated as a House floor amendment to a bill to amend the Gun Control Act of 1968;[3] the only legislative history consists of the floor debates prior to the bill’s passage. The debates evidence a .congressional concern with the rising incidence of the use of firearms in the commission of crimes, and an intention to deter such use by imposing higher penalties on federal criminals who use firearms.[4] See United States v. Melville, 309 F.Supp. 774 (S.D.N.Y.1970).
The amendment’s sponsor, Representative Poff, apparently recognized that certain federal crimes already entailed increased penalties if committed with firearms. He expressed his intention that the new statute would not be applicable to these crimes. He said:
For the sake of legislative history, it should be noted that my substitute is not intended to apply to Title 18, Sections 111, 112, or 113 which already define the penalties for use of firearms in assaulting officials, with Sections 2113 or 2114 concerning armed robberies of the mail or banks, with Section 2231 concerning armed assaults upon process servers or with Chapter 44 which defines other firearm felonies.
114 Cong.Rec. 22232 (1968) (remarks by Representative Poff).[5]
The sections of Title 18 enumerated by Representative Poff (except Chapter 44) have this in common: all impose a higher penalty for the felony specified if it is com *1172 mitted with a “dangerous” or “deadly” weapon. Representative Poff’s remarks evidence a clear congressional intention that the new statute not be applicable in cases involving statutes of this type. This intention accords with the deterrence rationale of § 924(c)(1). It is not necessary to deterrence to impose an increased penalty for use of a firearm by separate statute, when the substantive statute itself does so.
The crime charged in Count I, an assault between Indians in Indian country, is clearly a crime of the same type as those enumerated by Representative Poff. If committed with a dangerous weapon, it is a federal offense. If committed without a dangerous weapon, it is a minor offense within tribal jurisdiction. See 18 U.S.C. § 1152. The existing statutes, by providing federal sanctions only if firearms are used, perform the function of deterrence. Application of § 924(c)(1) to the crime is not necessary, and apparently was not intended by Congress.[6]
We thus conclude that a crime of the type charged in Count I, i. e., one for which the penalty is enhanced by use of a dangerous weapon, cannot form the basis of a prosecution under § 924(e)(1).
B.
We are convinced that § 924(c)(1) is inapplicable here for a second reason: federal jurisdiction of Count I arises by reason of the Major Crimes Act, 18 U.S.C. § 1153. It is our conclusion that Congress did not intend for a § 924(c)(1) prosecution to be available where the underlying felony is based on § 1153.
This conclusion is reached, again, after an examination of the legislative history and the purposes behind the two statutes.
We have already referred to the history of § 924(e)(1). As indicated, it is a relatively new statute, passed after only floor debate. Its purpose is to deal in a broad stroke with a specific evil — the use of firearms by federal felons.
Section 1153, in contrast, is a very old statute.[7] Together with 18 U.S.C. § 1152, it represents an attempt to balance the sometimes conflicting interests of the federal government, the Indian tribes, and the states in the regulation of criminal conduct in Indian country. See generally Keeble v. United States, 412 U.S. 205, 209-12, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). By the terms of § 1152, the general laws of the United States relating to government territory were extended to Indian country, except in certain cases, including those involving offenses between Indians. By terms of § 1153, certain major crimes between Indians were brought within federal jurisdiction. Among these crimes is the assault with a dangerous weapon which is the subject of Count I of the instant indictment.
From time to time these statutes have been amended to adjust the balance among the competing sovereignties. Particularly, § 1153 has been amended to provide that certain crimes, including the assault with a deadly weapon charged here, be “defined and punished in accordance with the laws of *1173 the State in which such offense was committed.” [8] These amendments represent an evident congressional purpose to conform the punishment of these crimes to that provided by state law.
To allow a § 924(e)(1) prosecution to be based on a § 1153 violation would conflict with this purpose. It would in effect impose a new federal penalty for conduct which Congress has determined will be punished in accordance with state law;[9]
We are thus faced with a conflict between two statutes: a general criminal statute, and a statute dealing with the specific problem of criminal conduct in Indian country. The rules of construction are clear as to which must prevail.
Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible, but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling.
2A Sutherland, Statutory Construction, f 51.05 (4th ed. 1975).
There is no indication that Congress, in enacting § 924(c)(1), intended to disturb the statutory scheme relating to Indian offenses. Therefore, § 1153, the specific statute dealing with the punishment of such offenses, must prevail as the controlling statement of national policy in this area. That section provides that the crime charged here must be punished in accordanee with state law. The inapplicability of § 924(c)(1), which creates a federal penalty, is clear.[10]
For these reasons, as well as for the reasons stated in IIIA above, we conclude that, under the proper construction of § 924(c)(1), “any felony” does not include the crime charged in Count I of this indictment: assault with a dangerous weapon in violation of § 1153. This being so, Count II of the indictment fails to charge an offense against the United States, and the conviction entered on that count must be vacated.
IV,
Appellant contends that the evidence was insufficient to prove beyond reasonable doubt that he was the man who shot and wounded Catches. Of course, in determining the sufficiency of the evidence we view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences favorable to its case which may be drawn therefrom. See United States v. Wisdom, 534 F.2d 1306 (8th Cir. 1976); United States v. Diggs, 527 F.2d 509, 512 (8th Cir. 1975).
Here, three government witnesses placed appellant at the scene of the crime, with a gun in his hand, immediately before the firing of the shots. Appellant, by alibi testimony, attempted to place himself elsewhere. The jury chose to believe the government’s witnesses; this court cannot say that it erred in so doing.[11] The sufficiency of the evidence to support the guilty verdict is apparent.
*1174 V.
Appellant finally contends that the trial court improperly imposed consecutive three year sentences on the two counts. He argues that, because appellant was young and had no prior convictions, the district court erred in imposing such harsh sentences.
Our disposition of Count II moots any claim based on the second three year sentence. The remaining sentence was within the statutory limits for this serious offense. A proper “no benefit” finding under the Federal Youth Corrections Act was made. Appellant’s attack on the sentence is therefore without basis. Dorszynski v. United States, 418 U.S. 424, 431, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); United States v. Crow Dog, 537 F.2d 308 (8th Cir. 1976).
For the reasons stated above, the conviction on Count II cannot stand. However, no basis for reversal on Count I has been shown.
The conviction and sentence on Count I are affirmed; the conviction and sentence on Count II are reversed.

. On voir dire, the jurors had been asked if they had ever heard of appellant. Long replied in the negative.

. Our conclusion is based solely on statutory grounds. We need not reach the question whether Congress could, consistent with the double jeopardy clause, punish as separate crimes (1) an assault with a dangerous weapon and (2) the use of a firearm in committing the assault.

. H.R. 17735, 90th Cong., 2d Sess. (1968), enacted as Pub.L. 90-618, Title I, § 102, 82 Stat. 1223.

. See 114 Cong.Rec. 21765 passim (1968).

. It is proper to consult this legislative history to determine whether Congress meant the phrase “any felony” to have a literal meaning, even though the statute is arguably unambiguous. “[Wjhen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no ‘rule of law’ which forbids its use, however clear the words may appear on ‘superficial examination.’ ” Train v. Colorado Public Interest Research Group,-U.S.-, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976); United States v. American Trucking Ass’ns, 310 U.S. 534, 543-44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (footnotes omitted).

. For a contrary result, it could be argued that Representative Poff did not specifically mention the § 1153 assault with a deadly weapon in his floor remarks, and that he therefore did not intend to exclude it from the operation of § 924(c)(1). However, we can perceive no apparent rational purpose for singling out the § 1153 offense, among dangerous weapon offenses, to be the basis of a § 924(c)(1) charge. Moreover, to do so would create serious constitutional problems. Representative Poff explicitly excluded from the increased penalty 18 U.S.C. § 113, which would be applicable to the assault charged here if it had been committed by a non-Indian on an Indian. Singling out the Indian defendant for harsher treatment may well run afoul of the equal protection aspects of the fifth amendment due process clause. See United States v. Cleveland, 503 F.2d 1067, 1070 (9th Cir. 1974); United States v. Goings, 527 F.2d 183 (8th Cir. 1975); United States v. Big Crow, 523 F.2d 955 (8th Cir. 1975). The desirability of avoiding the equal protection questions which would be created is a factor leading us to the construction adopted in the text. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348, 55 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

. Certain provisions of the current statute date from 1885. Act of March 3, 1885, c. 341, § 9, 23 Stat. 362, 385.

. Act of Nov. 2, 1966, Pub.L. 89-707, § 1, 80 Stat. 1100.

. We are aware that because § 924(c)(1) creates a new offense, the penalty for its violation is technically not a penalty imposed for the § 1153 crime. It can be argued that the two statutes are therefore not in conflict and that § 1153 itself is still punished solely in accord with state law. In ascertaining congressional intent, however, we look to the substance, rather than the form, of the statutes. Application of § 924(c)(1) here would clearly thwart the objective of amended § 1153: leaving the fixing of punishment for this conduct to the states.

. The authorities relied upon by the government for the proposition that the general criminal laws of the United States apply in Indian country (see, e. g., Stone v. United States, 506 F.2d 561 (8th Cir. 1974); Walks on Top v. United States, 372 F.2d 422 (9th Cir. 1967) are inapposite. Those cases did not present the problem, present here, of conflict between a general criminal statute and the statutory scheme governing Indian country offenses.

. That the government’s witnesses admitting to drinking on the day of the offense is not conclusive, but is merely a factor going to the credibility of their testimony.