# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1404

_____

United States of America,          *
                                       *

        Appellee,         *

                                       * Appeal from the United States
        v.                   * District Court for the
                                       * Southern District of Iowa.

Roberto Gallardo Chavez,     *

                                       *

        Appellant.       *

_____

Submitted:  September 12, 2000

Filed:  October 20, 2000

_____

Before WOLLMAN, Chief Judge, LAY, and BRIGHT, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Roberto Gallardo Chavez was convicted of one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846, two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Through its verdict form, the jury found that the quantity of methamphetamine involved was at least 1700 grams. Relying on the pre-sentence investigation report, which

suggested that the actual quantity was approximately 81 kilograms, the district court[1] sentenced Chavez to a life sentence on each count. Chavez appeals, and we affirm.

Chavez makes two arguments. First, he contends that the district court erred in denying his motion for a verdict of acquittal at the close of the State's evidence because the State failed to offer evidence sufficient to prove the elements of the crimes charged beyond a reasonable doubt. Second, he argues that Apprendi v. New Jersey, ___ U.S. ___, 120 S.Ct. 2348 (2000), requires that the drug quantities used in sentencing be found by a jury.

In reviewing a district court's denial of a motion for acquittal based on insufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and reverse only if no reasonable jury could have found that the defendant is guilty beyond a reasonable doubt. See United States v. Lacey, 219 F.3d 779, 783 (8th Cir. 2000). Although Chavez does not specify the alleged defects in the State's evidence, his arguments center on two contentions: (1) the State failed to prove the agreement element of the conspiracy charges, and (2) the State's witnesses were so lacking in credibility that their testimony was insufficient to support a guilty verdict.

To be guilty of conspiracy, a defendant must have knowingly entered into an agreement with at least one other person to violate the law. See id. The government may prove facts in issue in a criminal case by circumstantial as well as by direct evidence. See United States v. Thomas, 914 F.2d 139, 141-42 (8th Cir. 1990). "The facts and circumstances relied on by the government must be consistent with guilt, but they need not be inconsistent with any other reasonable hypothesis, and it is enough to convict if the entire body of evidence is sufficient to convince the jury beyond a

---

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

reasonable doubt that the defendant is guilty." Id. (quoting United States v. Wisdom, 534 F.2d 1306, 1309 (8th Cir. 1976)).

Sixteen witnesses appeared for the Government. Collectively, they testified that Chavez sold, distributed, and possessed methamphetamine, that he arranged for its delivery to Des Moines, that he had a money collection system, and that he associated and conducted business with other known drug dealers. Because this evidence was more than sufficient for the jury to conclude that Chavez knowingly entered into an agreement to violate the law, the district court properly declined to grant the motion for a verdict of acquittal on those grounds.

Chavez also claims that the district court should have granted his motion because the Government's witnesses were unreliable. Among other things, he argues that various witnesses had improper interests in testifying, gave testimony that conflicted with that of other witnesses, or were categorically untrustworthy. He also contends that certain witnesses were improperly permitted to give testimony for which no proper foundation had been laid.

In ruling on a motion for acquittal, the role of the district court is not to weigh evidence or consider the credibility of the witnesses, but rather to determine whether the Government has presented evidence on each element sufficient to support a jury verdict. See Burks v. United States, 437 U.S. 1, 16 (1978); United States v. Bredell, 884 F.2d 1081, 1082 (8th Cir. 1989). Questions of credibility are the province of the jury. See United States v. Fuller, 942 F.2d 454, 458 (8th Cir. 1991). The district court had neither the duty nor the authority to grant Chavez's motion based on witness credibility. Because we have also reviewed Chavez's claims that certain testimony should have been excluded for lack of proper foundation and find them to be without merit, we conclude that the district court committed no error in denying Chavez's motion for a judgment of acquittal.

We turn, then, to Chavez's <u>Apprendi</u> claim. According to <u>Apprendi</u>, the constitution requires that " . . . any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2363; <u>see</u> <u>United States v. Aguayo-Delgado</u>, 220 F.3d 926, 930 (8th Cir. 2000). Chavez was convicted of possession with intent to distribute methamphetamine, two counts of distribution of methamphetamine, and conspiracy to distribute methamphetamine. The statutory maximum for each of these crimes, even assuming the minimum quantities of methamphetamine found by the jury, is a life sentence. <u>See</u> 21 U.S.C. §§ 841(b)(1)(A) and 846. Therefore, because none of Chavez's sentences exceeds the statutory maximum, <u>Apprendi</u> is inapplicable. <u>See</u> <u>Aguayo-Delgado</u>, 220 F.3d at 993-94 (upholding sentence based on judge's findings of drug quantities where sentence was within range authorized by statute for defendants with prior convictions without regard to drug quantity); <u>accord</u> <u>United States v. Hernandez-Guardado</u>, Nos. 99-10342, 99-10480, 2000 WL 1264596 at *9 (9th Cir. Sept. 7, 2000); <u>United States v. Corrado</u>, Nos. 98-2269, 98-2270, 98-2365, 2000 WL 1199096 at *13 (6th Cir. Aug. 24, 2000); <u>United States v. Smith</u>, 223 F.3d 554, 565-66 (7th Cir. 2000). <u>Cf.</u> <u>United States v. Nordby</u>, No. 99-10191, 2000 WL 1277211 at *4-*5 (9th Cir. Sept. 11, 2000) (holding <u>Apprendi</u> mandated reversal where only finding of drug quantity was by preponderance of the evidence by sentencing judge and sentence exceeded statutory maximum prescribed for minimal drug quantities).

The judgment is affirmed.

BRIGHT, Circuit Judge, concurring.

I concur but write separately to once again express my view that the sentences imposed by the Sentencing Guidelines are often a waste of time and money. The sheer irrationality of the Sentencing Guidelines is graphically demonstrated by this case.

What
citizenship who has been heavily involved in drug trafficking but has committed no
violent crimes.  The district court followed the Guidelines and sentenced Chavez
to life imprisonment.

has a life expectancy of seventy-eight years.[2]
will probably spend thirty-five years in federal prison.  It costs the United States
government
offender in prison.   Therefore, it will cost the taxpayers $836,000 for his incarceration.

This
These unwise Sentencing Guidelines put nonviolent offenders in prison for years, they
the lives of the prisoners, their families, and they also hurt our economy and our
communities

---

[2]See                                                    Life Tables for Males  Vol. 47,
No.
Services, 1999, Table 2, p. 8.

[3]

Fiscal 1994, it cost an average of $58.50 per day to house an
inmate
The cost varies depending upon the security level of the institution in
which
facility.  The figure of $58.50 is the system-wide average [daily] cost.  In
1995, we estimate the average cost per day per inmate will be
$60.26, with an average annual amount of $21,995.

from Kathleen M. Hawk, Director, United States Department of Justice, Federal
Bureau
Bright).  Undoubtedly, these costs have increased over the past six years and may well

productive members of society locked up. The opportunity costs imposed by the Sentencing Guidelines are staggering.

A brief look at the federal prison population reveals the terrible dilemma facing America's drug war strategy. Our federal prisons are exploding. Our ninety-seven federal prisons cannot contain the 143,218 incarcerated men and women. In fact, 18,551 prisoners are housed in contract facilities. Today, 62,852 men and women are incarcerated in federal prisons for drug crimes. That means we spend $1,382,744,000 every single year to keep our federal drug offenders in federal prison. Unfortunately, the problem is getting worse. In 1970, 16.3% of federal prisoners were drug offenders. Today, 57% of federal prisoners are drug offenders.[4] What an awful waste.

America's drug war is an ill-fated attempt to overcome the economic axiom that supply will meet demand. Right now we are fighting the drug war primarily on one front, the supply side. We hope to eliminate drugs by eliminating the suppliers. We should consider fighting demand with greater conviction by fighting addiction. As long as there is a demand for drugs, some will brave the terrible risks and supply the drugs. Chavez took a risk and he will pay with his life. The United States will pay too.

Chavez's sentence is draconian and, even though it punishes him, it also punishes the American taxpayer. It would be more sensible to give Chavez a stiff, but shorter, sentence and to then promptly deport him to Mexico, as an example to other would-be drug dealers. Instead, the Sentencing Guidelines leave our hands tied. We are left with a tragic waste of a man's life, the irrational waste of the taxpayer's money, and an incredible opportunity cost to the entire community.

I expressed my views concerning a similar situation where a lesser sentence was imposed on a younger Mexican man in United States v. Alatorre, 207 F.3d 1078, 1079

---

[4]Federal Bureau of Prisons, Quick Facts, (last modified July, 2000) <http://www.bop.gov/>.

(8th Cir. 2000) (Bright, J., concurring).  Two outstanding law professors, Marc L.
[5] who have intensely and thoroughly studied the
Guidelines, got it exactly right writing an article in the Buffalo Criminal
Law Review.  I quote them in part:


is hard to know where to begin in describing the disaster that has become
disaster is all the more disheartening because the reform started with so
promise.  Few reform efforts--especially in the area of criminal justice,
thought at their core.


. . . .


the sentencing guidelines that emerged from the new administrative process
in U.S. history.  The collapse was quick, and it has become difficult to
the current system as the reasoned and principled system we believe
widely hated and in many ways dysfunctional.  The expert agency that
and monitors the guidelines--the U.S. Sentencing Commission --has
Rather than achieving honest, wise or equal sentencing, the primary
(albeit in conjunction with other developments) have
to raise the analysis of probation officers above the arguments of lawyers
the reasoning of judges, to shift the type of offenders in the federal

---

[5]Marc Miller is professor of law at Emory Law School, and founding editor of
Federal                         (Vera Institute / University of California Press).  Ronal
Miller and Wright are the editors of Criminal                                      
Executive Materials (1998).

system, to shift offenders from state to federal systems, and to pour offenders into federal prisons, for longer and longer periods.

How could such a thoughtful effort go so terribly wrong?

Marc L. Miller & Ronald F. Wright, Your Cheatin' Heart(land):  The Long Search for Administrative Sentencing Justice, 2 BUFFALO CRIM. L. REV. 723, 723, 726 (1999) (footnotes omitted).

In Alatorre, I asked, "Is anyone out there listening?"  If not, isn't it about time?

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.