# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 09-2999

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Hector Loaiza-Sanchez, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

No. 09-3003

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Jose Luis Juarez-Gonzalez, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  June 18, 2010
Filed:  September 22, 2010

_____

Before LOKEN, BRIGHT, and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

Hector Loaiza-Sanchez and Jose Luis Juarez-Gonzalez pleaded guilty to conspiring to distribute and possessing with intent to distribute a substantial quantity of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. After determining an advisory guidelines sentencing range of 168 to 210 months for each defendant, the district court[1] concluded based upon the sentencing factors in 18 U.S.C. § 3553(a) that a sentence within that range was appropriate. It then imposed a sentence above the bottom of the range because each defendant committed his offenses while in the country illegally. Loaiza-Sanchez and Juarez-Gonzalez appeal their sentences of 188 and 200 months in prison, respectively, arguing primarily that "alienage" is an improper sentencing factor. We affirm.

When reviewing the sentence imposed by a district court, we "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." If the sentence is procedurally sound, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 51 (2007).

Loaiza-Sanchez and Juarez-Gonzalez contend that the district court based their sentences on an improper sentencing factor, their status as illegal aliens. In considering this contention, we begin with the relevant statute, 18 U.S.C. § 3661:

No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense

---

[1]The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa.

which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

We then turn to the relevant guidelines provision, U.S.S.G. § 1B1.4:

> In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. See 18 U.S.C. § 3661.[2]

A relevant prohibition is found in the last sentence of 28 U.S.C. § 994(d), part of the Sentencing Reform Act of 1984 that enacted the then-mandatory Guidelines:

> The Commission shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders.

The Commission reflected this prohibition in U.S.S.G. § 5H1.10, p.s. Loaiza-Sanchez invokes this prohibition in suggesting that taking illegal alien status into account is national origin discrimination because the majority of illegal aliens are Hispanics. However, "a person's legal status as a deportable alien is not synonymous with national origin." United States v. Lopez-Salas, 266 F.3d 842, 846 n.1 (8th Cir. 2001). Thus, the district court committed no procedural error when, consistent with these statutes and guideline provisions, it considered the illegal alien status of Loaiza-Sanchez and Juarez-Gonzalez.

---

[2]These legislative pronouncements are consistent with the Supreme Court's long-standing approach to sentencing: "The sentencing court or jury must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." Wasman v. United States, 468 U.S. 559, 563 (1984).

Ignoring these governing statutes and guidelines provisions, Loaiza-Sanchez and Juarez-Gonzalez base their primary argument on our statement in United States v. Onwuemene that "sentencing an offender on the basis of factors such as race, national origin, *or alienage* violates the Constitution." 933 F.2d 650, 651 (8th Cir. 1991) (emphasis added). That statement relied on more limited statements in pre-Guidelines sentencing decisions, United States v. Borrero-Isaza, 887 F.2d 1349, 1352 (9th Cir. 1989), and United States v. Gomez, 797 F.2d 417, 419 (7th Cir. 1986). Taken literally, as Loaiza-Sanchez and Juarez-Gonzalez urge, the statement in Onwuemene is simply wrong. The Supreme Court has expressly rejected "the claim that 'illegal aliens' are a 'suspect class.'" Plyler v. Doe, 457 U.S. 202, 219 n.19 (1982). To the contrary, the Court has explained:

> In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens. The exclusion of aliens and the reservation of the power to deport have no permissible counterpart in the Federal Government's power to regulate the conduct of its own citizenry. The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is "invidious."

Mathews v. Diaz, 426 U.S. 67, 79-80 (1976).

From the perspective of what a sentencing court may constitutionally consider, the correct view of the issue was stated by Judge Richard Arnold, with his customary incisiveness, in rejecting the argument that a defendant should have been granted a downward departure to offset "the alienage-based increased severity of his sentence":

> Defendant entered this country illegally. Thereafter, he committed aggravated felonies. He is therefore concededly deportable as a matter of law. As a consequence of his deportability, he is . . . subjected to more onerous conditions of confinement. There is nothing unconstitutional or unfair about these consequences, all of which have

followed upon the defendant's voluntary acts. We cannot agree that he is given a more onerous sentence solely on the basis of alienage. . . . [T]he result is simply the permissible consequence of two things: the commission of the crimes and the defendant's status under the immigration statutes.

United States v. Navarro, 218 F.3d 895, 897-98 (8th Cir. 2000); accord United States v. Bahena, 223 F.3d 797, 807 (8th Cir. 2000), cert. denied, 531 U.S. 1181 (2001).

A defendant's illegal entry into this country is a voluntary act. It is also criminal misconduct. Like other prior criminal conduct, whether or not related to the offense of conviction, it is part of "the history and characteristics of the defendant" that the district court "shall consider" in imposing an appropriate sentence, 18 U.S.C. § 3553(a)(1), and it may be relevant in a particular case to the factors enumerated in § 3553(a)(2). See, e.g., United States v. Jenners, 537 F.3d 832, 835-36 (8th Cir. 2008) (court may consider uncharged criminal conduct). It is not an impermissible sentencing factor, and therefore the district court did not abuse its discretion by considering it.

Loaiza-Sanchez further argues that the district court committed procedural error by treating the guidelines as mandatory; failing to consider the § 3553(a) factors; failing to adequately explain the basis for the sentence imposed; and failing to properly consider his request for a downward variance. After careful review of the sentencing record, we conclude these contentions are without merit. See generally United States v. Feemster, 572 F.3d 455, 463-64 (8th Cir. 2009) (en banc); United States v. Lazarski, 560 F.3d 731, 733 (8th Cir. 2009). As in United States v. Lewis, 593 F.3d 765, 773 (8th Cir.), cert. denied, 130 S. Ct. 3375 (2010), the district court considered Loaiza-Sanchez's arguments for a downward variance but appropriately exercised its discretion in rejecting them.

Finally, Loaiza-Sanchez and Juarez-Gonzalez argue that their sentences are substantively unreasonable. As the sentences fall within the advisory guidelines ranges, they are presumptively reasonable. Loaiza-Sanchez and Juarez-Gonzalez concede that they entered the United States illegally, misconduct that was not taken into account in determining the advisory ranges. The district court did not abuse its discretion by sentencing them above the bottom of those ranges.

The judgments of the district court are affirmed.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent. In my view, increasing the sentence of a defendant because he is in the country illegally makes little sense when the defendant will be deported after serving his term of imprisonment. As I previously wrote in *United States v. Chavez*, 230 F.3d 1089, 1092 (8th Cir. 2000) (Bright, J., concurring), long sentences for illegal aliens punish not only the defendant but the American taxpayer. "It would be more sensible to give . . . a stiff, but shorter sentence and then to promptly deport him . . . as an example to other would-be drug dealers." *Id*.

Current data on our nation's prison population and its associated costs evidences this point. Nonviolent offenders constitute over 60% of the prison and jail population. John Schmitt, Kris Warner & Sarika Gupta, *The High Budgetary Cost of Incarceration,* Ctr. for Econ. & Policy Research, 1 (June 2010), http://www.cepr.net/documents/publications/incarceration-2010-06.pdf. Nonviolent drug offenders account for 25% of all offenders behind bars. *Id*. Our country currently spends over $75 billion per year on corrections. *Id*. at 2. Reducing the number of nonviolent offenders in our prisons and jails by half would save our nation $16.9 billion per year. *Id*. It would save the federal government $2.1 billion per year. *Id*. at 11. In this case, there is no record of violent conduct and no need to heavily punish the defendants or to burden the American taxpayer.

Moreover, there are approximately 11.9 million unauthorized immigrants living in the United States. Jeffrey S. Passel, *A Portrait of Unauthorized Immigrants in the United States*, Pew Hispanic Ctr., i (April 14, 2009), http://pewhispanic.org/files/reports/107.pdf. The vast majority of whom come to this country seeking employment and a better life. *See generally id.* The record here contains no evidence that these defendants came to the United States for the purpose of dealing drugs. And it simply seems unfair to punish these defendants differently than a United States citizen who commits the same crime.

Finally, the defendants' unlawful entry into this country does not warrant the penalty imposed by the district court. The maximum penalty for improper entry in violation of 8 U.S.C. § 1325 is six months' imprisonment. Here the district court increased each defendants' sentence by twenty months solely on the basis of defendants' unlawful entry. With respect to Juarez-Gonzalez, the district court stated, "I'm going to increase the sentence up to 200 months [from 180] because the defendant was in the country illegally and committed a crime while he was in the country illegally . . . ." With respect to Loaiza-Sanchez, the court stated, "I probably would have sentenced you right around the bottom of the guideline range, but I'm increasing it to 188 months [from 168] because you were an illegal guest in the United States and you committed a serious drug offense . . . ." Though the sentences remained within the guideline range for defendants' drug offenses, the court effectively imposed a term of imprisonment for illegal entry over three times the length of the maximum penalty allowed by statute.

Again, these are nonviolent drug offenders, who did not enter this country to traffic in narcotics, and who face deportation. Even if considering alienage is a permissible sentencing factor, the defendants' illegal entry does not warrant the harsh penalties imposed here.

_____