**UNITED STATES of America, Appellee,**

v.

**Wayne A. MATRA, TN Warren Anthony Hutchinson, Appellant.**

No. 87–1489.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1987.

Decided March 9, 1988.

Christopher Harlan, Kansas City, Mo., for appellant.

Peter M. Ossorro, Kansas City, Mo., for appellee.

Before McMILLIAN, ARNOLD, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Appellant Wayne A. Matra was convicted in the District Court[1] of possession of cocaine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1); use of a machine gun during and in relation to a drug trafficking offense, a violation of 18 U.S.C. § 924(c);[2] and possession of an unregistered machine gun, a violation of 26 U.S.C. § 5861(d). We affirm his convictions.

## I.

As part of an ongoing investigation of Jamaican nationals involved in the distribution of cocaine, law enforcement officers kept watch over a house at 3100 East Peery, Kansas City, Missouri.[3] They observed Matra at the house, beginning the first or second day of December 1986.

On December 5, 1986, the officers, armed with a federal search warrant, gained entry to the house at 3100 East Peery. After knocking loudly and announcing themselves as police officers, the entry team forced the locked back door with a battering ram. During the initial sweep of the house, officers discovered defendant Matra at the top of the stairs leading to the second floor. The officers placed him under guard and the search continued.

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

2. This statute's 1986 amendments do not yet appear in the official United States Code or a supplement thereto. They do appear in the supplement to Volume 18 of the United States Code Annotated. This opinion will refer to the statute as 18 U.S.C. § 924(c), except when quoting from the 1986 amendments.

3. This surveillance was part of a highly publicized investigation of crack houses in the Kansas City area. "Crack" is a highly addictive form of cocaine.

Two search teams combed through the house and seized various pieces of evidence. The team searching the first floor area alone found some sixty to seventy items, including a triple-beam scale, a number of small plastic bags, razor blades, a knife with a broken blade, and twenty-two rounds of 9 mm ammunition. The particular items just mentioned were found in the kitchen and the dining room.

The evidence collected from one of the house's two living rooms included several boxes of .223 caliber ammunition found on the fireplace mantel and on the top of a television set, six rounds of .357 magnum hollow point ammunition found on the mantel, and a box containing thirty-seven rounds of 9 mm ammunition on the top shelf of a built-in bookcase. Hidden under the seat cushions of a sofa was a .25 caliber pistol.

The officers also discovered a loaded .38 caliber pistol under the seat cushions of a couch in the other living room and another loaded .38 caliber pistol sticking out of the zipper bag of an upright vacuum cleaner in the foyer.

On the second floor, a .357 caliber semi-automatic pistol was found under the bed-covers in the south bedroom. The center bedroom, the locked door to which had been kicked open by the entry team, yielded a number of important items. Beneath the waterbed frame, officers discovered a loaded .223 caliber assault rifle, a loaded submachine gun, an unspecified quantity of cash, and a second set of triple-beam scales. A loaded 12–gauge shotgun was standing upright in a corner. In an un-

locked dresser drawer, searchers found $5,155 in cash. A small packet of cocaine was found behind a dresser drawer. In a hole in the closet floor of the center bedroom, officers recovered 565.20 grams of 92% pure cocaine,[4] $9,000 in cash, some .45 caliber ammunition, and a box containing twenty-five 12–gauge shotgun shells.

Twelve photographs of Matra were found in the center bedroom. Several of the pictures had been taken in that bedroom. Matra appears in different clothing in different pictures and is shown posing with alleged narcotics violators and with the acknowledged purchaser of the house. Handguns can be seen in some of these photographs.

In the north bedroom,[5] a loaded .45 caliber semi-automatic rifle was found on top of a waterbed.[6] A burgundy gym bag also was recovered in this room. It contained immigration documents, prescription bottles, and an envelope, all bearing the name of Wayne A. Matra.

Matra was detained outside the house during the search and was arrested following the discovery of the cocaine and the machine gun in the center bedroom.[7] Incident to the arrest, defendant was searched and his personal effects were seized for safekeeping. Among the items found on his person was a key to the door of the center bedroom.

Indicted by a federal grand jury on the charges mentioned at the beginning of this opinion, Matra waived his right to a jury trial. After a bench trial, the District Court found that Matra had complete control of the house, that he knew that the

---

4. The estimated street value of the cocaine was between $140,000 and $200,000.

5. This bedroom overlooks the back entrance to the house. This back entrance was the only entrance to the residence that was not barricaded from the inside. It was locked from the inside with a deadbolt lock, in which the key was found.

6. This weapon is a Thompson machine gun "look-alike." While not subject to controls, it is a paramilitary rather than a sporting or target weapon. The only .45 caliber ammunition found during the search was in the hole in the closet floor of the center west bedroom.

7. Following his arrest, defendant declared that he was a Jamaican citizen and a legal resident of the United States. He directed the officers to his immigration documents, those discovered in the gym bag found in the north bedroom. A subsequent check of the records of the Immigration and Naturalization Service showed that Wayne A. Matra was a citizen of India, not Jamaica. At his sentencing hearing on April 7, 1987, defendant stated that his true name is Warren Anthony Hutchinson. For convenience, we refer to him throughout this opinion as Matra.

cocaine and the machine gun were in the center bedroom, and that he was a trusted member of the group that was using the house for the purpose of selling cocaine. After denying Matra's motion for judgment of acquittal, the Court found him guilty as charged and sentenced him to a total of thirty-five years in prison, thirty years of which must be served without parole.

For reversal, Matra argues that the District Court erred in denying his motion for judgment of acquittal because: (1) the evidence was insufficient to convict him of possession of cocaine with intent to distribute; (2) the evidence was insufficient to convict him of illegal possession of an unregistered machine gun; (3) defendant did not "use" the machine gun during and in relation to a drug trafficking offense as required by 18 U.S.C. § 924(c); and (4) the crime of possession of cocaine with intent to distribute is not a "drug trafficking" offense within the meaning of 18 U.S.C. § 924(c). For the reasons set forth below, we affirm.

## II.

We first address Matra's claims regarding the sufficiency of the evidence. Our standard of review is well established. We must examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences, and can reverse only if we conclude that a reasonable fact-finder could not have found guilt beyond a reasonable doubt. *See, e.g., United States v. Parrino*, 816 F.2d 414, 417 (8th Cir.1987); *United States v. Davis*, 785 F.2d 610, 619 (8th Cir.1986). *See also United States v. Barletta*, 565 F.2d 985, 991 (8th Cir.1977).

## A.

In order to convict Matra of a violation of 21 U.S.C. § 841(a)(1), the government had to prove that he knowingly possessed cocaine with the intent to distribute it. *See United States v. Cardenas*, 748 F.2d 1015, 1019 (5th Cir.1984). Matra argues that the evidence was insufficient to show that he: (1) knowingly possessed cocaine; and (2) had the intent to distribute it.

Proof of constructive possession is sufficient to satisfy the element of knowing possession under § 841(a)(1). *See United States v. Wajda*, 810 F.2d 754, 761 (8th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). We have defined constructive possession as knowledge of presence plus control. *Id.* A person has constructive possession of contraband if he has "ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed." *Cardenas*, 748 F.2d at 1019 (citation omitted).

Having carefully reviewed the record, we conclude that the evidence is sufficient to establish that Matra had constructive possession of the cocaine. Matra had been seen at the house prior to December 5, 1986, the day of the search. He was the only person found in the house. He did not make his presence known to the officers during their search. To the contrary, they found him when they began their sweep of the second floor.

The house was, as the District Court noted, a "fortress." Its only unbarricaded entrance was locked from the inside. Matra's personal belongings were found in the bedroom that overlooked this sole entrance. His admissions also connected him to this bedroom. In this room, the officers found a semi-automatic, paramilitary weapon—a weapon capable of providing deadly fire to keep intruders out of the house.

The officers found numerous other weapons, as well as ammunition and drug paraphernalia, much of it in plain view. Some of the ammunition would fit only weapons found in the locked center bedroom, to which Matra had the key. The District Court likened this room to a "vault." Inside the room, the officers found between $140,000 and $200,000 worth of cocaine, a number of weapons, substantial quantities of ammunition, cash totalling at least $14,155, and photographs of Matra showing him posing with alleged narcotics dealers and with the owner of the house. In the various photographs Matra wears different outfits, which suggests that he was at the

house with some frequency. Some of the photographs were taken in the "vault" room, and several show Matra with guns.

The evidence thus gives rise to a compelling inference that Matra, far from being a casual visitor to the house who had the bad luck of being there when the police arrived, in fact controlled the house and the cocaine it harbored. Based on the record as a whole, we are satisfied there is ample evidence of constructive possession to support Matra's conviction.

■ The record also contains sufficient evidence with respect to the second element of the § 841(a)(1) offense, intent to distribute, to support Matra's conviction. The intent to distribute may be proved by either direct or circumstantial evidence and may be inferred from such things as the possession of a large quantity of a controlled substance, its high purity level, the presence of paraphernalia used to aid in its distribution, large sums of unexplained currency, and the presence of firearms. *See, e.g., United States v. LaGuardia,* 774 F.2d 317, 320 (8th Cir.1985). Here, Matra was caught red-handed in charge of a crack house in which were stashed 565.20 grams of 92% pure cocaine, paraphernalia used in the distribution of cocaine, at least $14,155 in cash, and a small arsenal of firearms and ammunition. This evidence amply demonstrates Matra's intent to distribute the cocaine.

There being sufficient evidence of Matra's constructive possession of cocaine and of his intent to distribute it, we hold that the District Court did not err in denying Matra's motion for acquittal as to the 21 U.S.C. § 841(a)(1) charge.

### B.

■ Defendant also claims that the evidence was insufficient to convict him of possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d). The charge of possession of an unregistered firearm requires only that the defendant be shown to have possessed an unregistered weapon that he knew to be a firearm. *United States v. Runyon,* 621 F.2d 317,

318 (8th Cir.1980) (citing *Morgan v. United States,* 564 F.2d 803, 805 (8th Cir.1977)).

■ "Possession" for purposes of § 5861(d) may be either actual or constructive. *See, e.g., United States v. Taylor,* 728 F.2d 864, 868 (7th Cir.1984). "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.... Both actual and constructive possession may be proved by direct or circumstantial evidence." *Id.* (citation omitted).

■ In this case, there is ample evidence in the record to establish that Matra constructively possessed the machine gun. He was found in possession of the key to the center bedroom, where the machine gun was concealed, and extra ammunition for the machine gun was found in plain view on the ground floor of the house. Matra was the only person in the house and obviously had complete control of the premises on the day of his arrest. He does not dispute that he knew the machine gun was a firearm, or that it was unregistered. There is no question about its appearance or function, and the photographs of Matra with firearms on or about his person suggest his familiarity with such weapons. We conclude that the District Court did not err in denying Matra's motion for a judgment of acquittal on the 26 U.S.C. § 5861(d) charge.

### III.

Matra attacks his conviction under 18 U.S.C. § 924(c) by contending that: (1) he did not "use" the machine gun during and in relation to a drug trafficking offense as required by § 924(c); and (2) possession of cocaine with intent to distribute is not a "drug trafficking" offense within the meaning of § 924(c). We disagree.

### A.

■ Matra urges that we interpret § 924(c)'s "use" language to preclude conviction unless the government shows the

defendant's actual possession of either the weapon or the drugs. We reject such a narrow interpretation.

In the case of *United States v. LaGuardia*, 774 F.2d 317 (8th Cir.1985), this Court stated that "[t]he presence and availability in light of the evident need demonstrates [sic] the use of the firearm to commit the felony." *Id.* at 321.[8] In *LaGuardia*, police found a loaded pistol inside a purse on a bed, another loaded pistol on a shelf in a closet among numerous items of clothing, and a rifle inside the trunk of LaGuardia's car parked outside the apartment. Approximately eighteen ounces of cocaine, at least $9,800 in cash, and various drug-related items also were discovered on the premises. Recognizing the utility of firearms to those who traffic in illegal drugs, this Court held that the evidence of the weapons, found in connection with the cocaine and cash, was sufficient to support the submission of the § 924(c) firearms charge to the jury. *Id.* *See also United States v. Randle*, 815 F.2d 505, 508 (8th Cir.1987) (firearms are frequently possessed by drug dealers to protect themselves and their inventory of illegal drugs).

The facts of this case are similar to those of *LaGuardia*. Here, police found weapons and ammunition, a large quantity of cocaine and cash, and drug paraphernalia. As in *LaGuardia*, none of these items was in the actual possession of the defendant, but all were under his control. The machine gun was present and was available to Matra as he had possession of a key to the room in which the gun was concealed. This weapon "had undoubted utility in the protection of the valuable [cocaine] supply and of the cash on hand." *LaGuardia*, 774 F.2d at 321.

As the District Court observed, the house at 3100 East Peery was a veritable fortress, having only one usable entrance, which easily could be guarded from a second-story window. Inside the "fortress" were a number of loaded firearms, with ammunition readily available, a large quantity of cocaine of high purity, and a large amount of cash. Just as weapons are kept at the ready to protect military installations against potential enemy attack, so too may weapons be kept at the ready to protect a drug house, thereby safeguarding and facilitating illegal transactions. *See id.* *See also United States v. Mason*, 658 F.2d 1263, 1271 (9th Cir.1981).

The fortress analogy was relied upon by the Second Circuit in *United States v. Grant*, 545 F.2d 1309, 1312 (2d Cir.1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977). The "fortress" in *Grant* was the Piggy Back Social Club, which had television monitors located throughout, special reinforced doors, and heavy locks. Guns were found in the Club, along with large quantities of cocaine and marijuana, and material used to "cut" these substances. Grant, who managed the Club and apparently lived there, argued that the evidence failed to establish that he used a firearm to commit a felony. At most, he contended, it showed that he merely possessed the guns.

In rejecting this contention, the Second Circuit reasoned that "the evidence established that Grant used the guns as part of a tight security operation to protect large quantities of cocaine and hence to commit the felony of possessing cocaine with intent

---

**8.** The statute under which LaGuardia was convicted was the original version of 18 U.S.C. § 924(c), which provided enhanced penalties for anyone who "uses a firearm to commit any felony." The purpose of the original § 924(c) was to impose more severe sanctions where firearms facilitated, or had the potential to facilitate, the commission of a felony. *See United States v. Stewart*, 779 F.2d 538, 540 (9th Cir. 1985). In 1984, as part of the Comprehensive Crime Control Act, Congress revised § 924(c) to make it apply only to those engaging in crimes of violence.

The current version of § 924(c), which governs Matra's case, resulted from the passage in 1986 of the Firearms Owners' Protection Act. As amended by that Act, the statute extends punishment to anyone who "during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm." 18 U.S.C. A. § 924(c)(1) (Supp.1987). As the "use" language was not changed in either of the amendments, the *LaGuardia* case retains its precedential value.

to distribute it." *Id.* at 1312.[9] We can discern no material difference between the facts found sufficient in *Grant* to support conviction under § 924(c) and the facts of the present case.

Similarly, in *United States v. Moore,* 580 F.2d 360 (9th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978), the defendant was arrested while walking toward a bank.[10] He was wearing gloves and a ski mask, was carrying two pillow cases, and had a loaded pistol concealed in the waistband of his trousers. The Ninth Circuit rejected Moore's argument that he did not "use" the pistol. "The fact that Moore never had an opportunity to brandish or discharge his gun does not mean that he did not 'use' it. Moore attempted to rob a bank and possession of a loaded gun was an integral part of the attempt. Moore 'used' his gun.... [It] increased the likelihood of success; without [it] he probably would not have sallied forth." *Id.* at 362. *See also United States v. Chase,* 692 F.2d 69, 71 (9th Cir.1982) (court concludes without discussion that the evidence was sufficient to show that Chase used a gun to commit the felony of possession of cocaine with intent to distribute where the search of his residence yielded 1,120 grams of cocaine and a .38 caliber pistol).

Although Matra, unlike the defendant in *Moore,* did not have a firearm on his person, he did have ready access to the machine gun. Like the defendant in *Moore,* Matra did not brandish or discharge his weapon, but it was an integral part of his criminal undertaking and its availability increased the likelihood that the criminal undertaking would succeed. In these circumstances, it would defy both logic and common sense to conclude that Matra did not "use" the machine gun within the meaning of § 924(c). To the contrary, we are satisfied that the record in this case sufficiently supports the District Court's determination that Matra "used" the machine gun during and in relation to his possession of cocaine with intent to distribute as required by § 924(c).

**B.**

■ Matra argues that possession of cocaine with intent to distribute is not a drug trafficking offense within the meaning of § 924(c). He claims that possession of cocaine with intent to distribute is a mere possessory offense and is not the type of serious drug trafficking crime that Congress intended the statute to encompass. We disagree.

Section 924(c)(2) defines a "drug trafficking crime" as "any felony violation of Federal law involving the distribution, manufacture, or importation of any controlled substance." 18 U.S.C.A. § 924(c)(2) (Supp. 1987). "When we find the terms of a statute unambiguous, judicial inquiry is complete...." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981).[11] Giving effect to the plain language of this statute, we conclude that violations "involving" the distribution, manufacture, or importation of controlled substances must be read as including more than the crimes of distribution, manufacture, or importation. The crime of possession of cocaine with intent to distribute, of which Matra stands convicted, requires proof of the defendant's specific intent to distribute. It is clearly a crime "involving" the distribution of cocaine.

Our decision is consonant with a recent decision from the Fourth Circuit that "§ 924(c) by its terms unambiguously applies to crimes of possession with intent to distribute." *United States v. James,* 834 F.2d 92, 92–93 (4th Cir.1987). *See also United States v. Cruz,* 805 F.2d 1464, 1475 n. 12 (11th Cir.1986), *cert. denied,* —— U.S.

---

**9.** Grant was convicted under the original version of § 924(c). While the statute has been revised, the "use" language has not been altered. *See supra* note 8.

**10.** The arrest was based upon information provided by an informant.

**11.** While Matra urges this Court to apply the "rule of lenity" to this statute, that rule is to be applied only when there is uncertainty about the statute's meaning. *See United States v. Eklund,* 733 F.2d 1287, 1297 (8th Cir.1984), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985).

——, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987) ("Our decision ... does not preclude the conviction of drug traffickers for the crime[ ] of possessing narcotics with intent to distribute....").

Matra's convictions are AFFIRMED.