918 F.2d 1371
 31 Fed. R. Evid. Serv. 885
 UNITED STATES of America, Appellee,
v.
Troy Carlos YERKS, (John Doe, a/k/a Spanky, James Dennis
Stewart, Prince Gervell Campbell, John Dennis
Smith, Tim Smith, James Carlos Smith), Appellant.
 No. 89-2621WM.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1990.
Decided Nov. 21, 1990.
 
 R. Steven Brown, Federal Public Defender, Springfield, Mo., for appellant.
 Richard E. Monroe, Asst. U.S. Atty., Springfield, Mo., for appellee.
 Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Troy Yerks was convicted by a jury of possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1), (b)(1)(A), and was sentenced to thirty years' imprisonment. Yerks appeals his conviction and sentence, contending that the district court[1] erred by (1) admitting other crimes evidence; (2) denying his motion for judgment of acquittal based upon insufficiency of the evidence; and (3) incorrectly applying the Sentencing Guidelines. We affirm.
 
 I.
 
 2
 On April 25, 1989, officers of the Springfield, Missouri Police Department executed a search warrant at Apartment F-22 of the Briarwood Apartments complex in Springfield. The officers seized a large quantity of crack cocaine that was hidden in the tank of the toilet. Yerks arrived during the search and unlocked the apartment door with a key he had. He was arrested in the hallway outside the apartment as he attempted to flee. Yerks told the officers he had come to visit a friend and that the friend had given him the key, but then later asked one of the officers how they had found out about the apartment. As he was escorted from the apartment building, Yerks attempted to escape custody. He also yelled to his girlfriend the number combination for a safe located in her apartment, where he frequently stayed, telling her to get the money and get him out.
 
 
 3
 Other items found in Apartment F-22 included the safe's combination, a rent receipt for April 1989 bearing one of Yerks' aliases, an expensive stereo system, cash, and a set of triple-beam scales. The apartment contained no furniture and appeared as though it was not being used as a residence.
 
 II.
 A.
 
 4
 Yerks argues that the district court erred in admitting evidence that he distributed crack cocaine in the months preceding his arrest. Four witnesses testified that they repeatedly received crack from Yerks during this period. These witnesses were admitted drug users and had been promised that they would not be prosecuted for the crimes about which they testified. In addition, a Springfield police officer testified that on several occasions he had seen Yerks in a particular vehicle with two of the four witnesses and had often observed this vehicle near a house where illegal drugs were sold.
 
 
 5
 Other crimes evidence is admissible under Fed.R.Evid. 404(b) if it is (1) relevant to a material issue; (2) of crimes similar in kind and reasonably close in time to the crime charged; (3) sufficient to support a jury finding that the defendant committed the other crimes; and (4) more probative than prejudicial. United States v. Dobynes, 905 F.2d 1192, 1194-95 (8th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990). We view Rule 404(b) as a rule of inclusion, "permitting admission of other crimes evidence unless it tends to prove only the defendant's criminal disposition." Id. at 1195. The district court has broad discretion in determining whether to admit such evidence, and " 'its decision will not be overturned unless it is clear that the evidence had no bearing upon any of the issues involved.' " Id. (quoting United States v. O'Connell, 841 F.2d 1408, 1422 (8th Cir.), cert. denied, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989)).
 
 
 6
 In light of these principles, we cannot say that the district court erred in admitting the evidence of prior crack cocaine distribution by Yerks. This evidence was certainly relevant to establishing that Yerks intended to distribute the crack seized in Apartment F-22. The credibility of the witnesses was for the jury to evaluate. United States v. Hudson, 717 F.2d 1211, 1213 (8th Cir.1983). If given credence, their testimony was enough to permit a finding that Yerks had engaged in the prior distribution. We are satisfied that the other requirements for admission were also met and note that the district court properly instructed the jury several times as to the limited purposes for which the other crimes evidence could be considered.
 
 B.
 
 7
 To convict Yerks of violating Sec. 841(a)(1), the government had to prove that he knowingly possessed cocaine and had the intent to distribute it. United States v. Matra, 841 F.2d 837, 840 (8th Cir.1988). Yerks contends that the district court should have granted his motion for judgment of acquittal because the evidence was insufficient to establish either of these elements. In reviewing this contention, we must examine the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences that may logically be drawn from the evidence. See, e.g., United States v. Adkins, 842 F.2d 210, 212 (8th Cir.1988). We may overturn the jury's verdict "only if the evidence so viewed is such that a reasonable-minded jury must have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense." United States v. Noibi, 780 F.2d 1419, 1421 (8th Cir.1986) (emphasis in original). Applying this standard, we have no difficulty concluding that the district court properly denied Yerks' motion for acquittal.
 
 
 8
 "Proof of constructive possession is sufficient to satisfy the element of knowing possession under Sec. 841(a)(1)." Matra, 841 F.2d at 840. "A person has constructive possession of contraband if he has 'ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.' " Id. (quoting United States v. Cardenas, 748 F.2d 1015, 1019 (5th Cir.1984)) (emphasis added). Both the manager and the leasing agent for the Briarwood Apartments identified Yerks as the person who rented Apartment F-22 in late March 1989. At the time of his arrest one month later, Yerks possessed the key to the apartment. This and other evidence of Yerks' dominion over Apartment F-22 were more than adequate to establish his constructive possession of the seized crack cocaine. See United States v. Brett, 872 F.2d 1365, 1369 & n. 3 (8th Cir.) (possession of key to front door of residence sufficient to prove constructive possession of cocaine concealed therein), cert. denied, --- U.S. ----, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989).
 
 
 9
 The intent to distribute may be proven by circumstantial evidence and "may be inferred from such things as the possession of a large quantity of a controlled substance, its high purity level, the presence of paraphernalia used to aid in its distribution, large sums of unexplained currency, and the presence of firearms." Matra, 841 F.2d at 841. A police chemist testified that the substance recovered from the toilet tank in Apartment F-22 weighed 314.7 grams and was approximately 82% cocaine base. An experienced officer conservatively estimated the street value of this crack cocaine to be $63,300, and further testified that the type of scales found in the apartment are commonly used to weigh out drugs. Also found in the apartment was $1,298.25 in cash. An additional $7,525 in cash was discovered in the safe in Yerks' girlfriend's apartment. In combination with the testimony concerning prior crack cocaine distribution by Yerks, this evidence was clearly sufficient to support an inference that he had the intent to distribute the crack hidden in Apartment F-22. See United States v. Peters, 912 F.2d 208, 211 (8th Cir.1990) (intent to distribute established by quantity and purity of crack cocaine seized and drug paraphernalia seized).
 
 III.
 
 10
 At the sentencing hearing, the district court set Yerks' total offense level at 42 and his criminal history category at III. This resulted in an applicable guideline range of 360 months to life. See Sentencing Guidelines Ch. 5, Pt. A (sentencing table). The court then sentenced Yerks to 360 months' imprisonment and five years of supervised release. Yerks argues that the court incorrectly applied the guidelines in (1) setting his base offense level at 36 rather than 34 under guidelines Sec. 2D1.1(a)(3); (2) increasing his offense level by four levels under guidelines Sec. 3B1.1(a); (3) increasing his offense level by two levels under guidelines Sec. 3C1.1; and (4) failing to consider a downward departure from the applicable guideline range.
 
 
 11
 We turn first to the adjustment under Sec. 3B1.1(a), which provides for a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." We have recognized that this section "employs a very broad definition of what constitutes a 'leadership and organizational role.' " United States v. Collar, 904 F.2d 441, 442 (8th Cir.1990); see also United States v. Johnson, 906 F.2d 1285, 1291-92 (8th Cir.1990) (finding that defendant is functioning as an organizer or leader does not necessarily mean he is directly controlling other individuals). A finding that the defendant was an organizer or leader for the purpose of Sec. 3B1.1(a) is reviewed under the clearly erroneous standard. United States v. Wayne, 903 F.2d 1188, 1198 (8th Cir.1990).
 
 
 12
 The evidence at trial supported a finding that there were at least five other participants in Yerks' criminal activity. There was testimony that Yerks fronted crack cocaine to one person, sold crack to three others who then resold it, and provided the drug to a fifth person in exchange for that person registering Yerks' vehicles in his name rather than Yerks'. These persons would contact Yerks by paging his "beeper." In determining that Yerks acted as a leader in this criminal activity, the district court stated:
 
 
 13
 Obviously he set up a very subtle approach to this matter, that is he got cars in other people's names, apartments in other people's names, and he controlled them and he controlled the crack which was the whole basis of their operation, and he enlisted a number of young men who were either addicts or users to sell this crack and he furnished them the crack to sell and I think he directed them to a considerable extent. And the evidence was very clear on that point and I think unquestionably he was a leader in this whole enterprise.
 
 
 14
 Sentencing Tr. at 23. This finding is not clearly erroneous. Accordingly, we must reject Yerks' challenge to the Sec. 3B1.1(a) adjustment.
 
 
 15
 We also uphold the district court's upward adjustment under Sec. 3C1.1 for obstruction of justice. Yerks does not dispute that he gave the arresting officers an alias and later signed another alias on a financial status affidavit at his first appearance before the federal magistrate. Nevertheless, Yerks asserts that Sec. 3C1.1 is inapplicable in this case because there was no showing that his use of aliases caused the government to lose any time, manpower or money. Brett, 872 F.2d at 1372-73. Although it appears the government may have suffered such prejudice, we need not resolve that question. Section 3C1.1 specifically encompasses attempted obstruction, which does not require success in actual obstruction. United States v. Patterson, 890 F.2d 69, 72 (8th Cir.1989). Even if Yerks did not succeed in actually obstructing the administration of justice, his use of aliases constituted attempted obstruction, warranting a Sec. 3C1.1 adjustment. See United States v. Blackman, 904 F.2d 1250, 1258-59 (8th Cir.1990) (use of alias during detention hearing and pre-bail interview qualified defendant for Sec. 3C1.1 increase whether or not there was actual prejudice to the government); Patterson, 890 F.2d at 72-73 (giving of false name to authorities at time of arrest amounted to attempt to conceal material evidence and therefore fell within Sec. 3C1.1).
 
 
 16
 A much closer question is whether the record supports the district court's decision to set Yerks' base offense level at 36 rather than 34 based upon an additional 460 grams of cocaine for which Yerks was not charged. However, given our conclusions that the adjustments under Secs. 3B1.1(a) and 3C1.1 were proper, the applicable guideline range would remain 360 months to life whether Yerks was assigned a base offense level of 36 or 34. See Guidelines Ch. 5, Pt. A (for defendant with criminal history category of III, total offense level of either 42 or 40 yields guideline range of 360 months to life). Therefore, we need not decide this question. See United States v. Phillippi, 911 F.2d 149, 151 (8th Cir.1990) (error in including additional cocaine in calculation of base offense level was harmless because it did not change guideline range); United States v. Luster, 896 F.2d 1122, 1130 n. 10 (8th Cir.1990) (resentencing not warranted where error in calculating drug quantity did not change guideline range); cf. United States v. Bermingham, 855 F.2d 925, 931 (2d Cir.1988) ("disputes about applicable guidelines need not be resolved where ... the same sentence would have been imposed under either guideline range").
 
 
 17
 When Yerks requested a downward departure from the applicable guideline range, the district court responded as follows: "Well, I don't see how I could justify a downward departure under the facts of this case at all except to just say that I think the guidelines are too severe which I sometimes do, but that's not my determination. I've got to go by the guidelines...." Sentencing Tr. at 29. Contrary to Yerks' contention, we do not believe this statement shows that the court declined to depart downward because of a belief it lacked the power to do so. Rather, we read the statement as reflecting a discretionary decision not to depart based on the facts of this case. Such a decision is nonreviewable. United States v. Evidente, 894 F.2d 1000, 1003-05 (8th Cir.), cert. denied, --- U.S. ----, 110 S.Ct.1956, 109 L.Ed.2d 318 (1990).
 
 IV.
 
 18
 For the foregoing reasons, Yerks' conviction and sentence are affirmed.
 
 
 
 [1]
 The Honorable William R. Collinson, Senior United States District Judge for the Western District of Missouri