UNITED STATES of America, Appellee,

v.

David James FULLER, Appellant.

UNITED STATES of America, Appellee,

v.

Leon Ray FULLER, Appellant.

Nos. 90–2394, 90–2487.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1991.

Decided Aug. 5, 1991.

Certiorari Denied Oct. 15, 1991.

See 112 S.Ct. 315.

Thomas O'Flaherty, Cedar Rapids, Iowa, argued, Anna Wirt O'Flaherty, Cedar Rapids, Iowa, on the brief, for appellant David Fuller.

Michael E. Sheehy, Cedar Rapids, Iowa, for appellant Leon Fuller.

Janet Petersen, Cedar Rapids, Iowa, for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and LARSON,* Senior District Judge.

WOLLMAN, Circuit Judge.

Leon Ray Fuller and David James Fuller appeal their convictions and sentences for federal drug crimes. We affirm.

## I.

Leon and David Fuller are brothers. During the winter of 1989 they sold methamphetamine to confidential police informants Steve and Roxanne Steen on several occasions.

The first drug transaction was initiated by the Steens, who were introduced to David by Cindy Straight, an acquaintance of the Steens, in November 1989. David brought Steve Steen to Leon's home, where David went inside and returned with methamphetamine. Soon thereafter, another very similar sale took place, with Cindy Straight and David acting as intermediaries between Leon and the Steens. During the third controlled drug purchase, the Steens dealt directly with Leon. Several days after their first direct drug dealing, the Steens purchased two more quantities of methamphetamine directly from Leon.

* The HONORABLE EARL R. LARSON, United States Senior District Judge for the District of Minnesota, sitting by designation.

The Steens purchased from the Fullers a total of 78.35 grams of methamphetamine in these five transactions.

After these initial five drug deals, Leon told Steve Steen that he was waiting for a delayed shipment of methamphetamine from California and was temporarily without a source for the drug. Leon eventually told Steve Steen that he would get drugs from Wayne Burns, a supplier of methamphetamine and cocaine to the Waterloo area. Evidently, Leon made the contact with Burns, because Leon and his girlfriend, Diane Fleming, gave Roxanne Steen between one-quarter and one-half ounce of cocaine as a Christmas present. Leon bought Burns' last three ounces of methamphetamine soon after Christmas of 1989, later selling some of it to Randy Linderman. Linderman testified at trial to buying three quarters of an ounce of methamphetamine from Leon.

Late in December, Steve Steen arranged to make a final drug deal to buy liquid methamphetamine from Leon and two of his associates, Steve Amo and Rod Milius. Amo and Milius attempted to manufacture the drug, but substituted an ingredient and failed to produce methamphetamine. Steve Steen also agreed at that time to buy seven ounces of powdered methamphetamine that Burns had supplied to Leon.

On the day the final transaction occurred, January 4, 1990, Leon and David and Diane Fleming were arrested for drug dealing. The three were indicted together. Leon was charged with five counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1), two counts of aiding in the distribution of methamphetamine under 18 U.S.C. § 2, and one count of conspiracy to possess, to intend to distribute, and to attempt to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. David was charged with two counts of distribution and aiding in the distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and one count of conspiracy. Diane

Fleming was charged with one count of conspiracy.

David and Leon were tried together. During jury selection, Leon's counsel complained that the prosecutor used two peremptory challenges to eliminate the only two black persons from the panel. After asking the prosecutor to explain the challenges, the district court[1] refused to grant a mistrial, finding the prosecutor's reasons for striking the prospective jurors to be legitimate. Midtrial, David moved for a mistrial, contending that the prosecutor had improperly talked to a witness during a recess. The district court denied the mistrial motion, finding no prosecutorial misconduct. The jury convicted the Fullers on all counts. Leon was sentenced to 135 months' imprisonment on each count against him, to be served concurrently, followed by five years' supervised release. David was sentenced to 240 months on each of counts one and two, and to 262 months on the conspiracy count against him, to be served concurrently, followed by five years' supervised release.

## II.

Leon argues that the prosecutor used two peremptory strikes to eliminate the only black members of the jury panel, thus denying him a fair trial. David joins in this argument. Leon further argues that he did not receive a speedy trial. Finally, Leon contends that the district court did not correctly apply the Sentencing Guidelines in his case.

David contends that there was insufficient credible evidence to support his conviction. He further contends that the district court should have granted his motion for a mistrial after the prosecutor improperly spoke with a witness during a short recess at trial. Finally, David argues that Count 6 of the indictment, the conspiracy charge, should have been dismissed.

Leon's first argument, based on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct.

---

1. The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

1712, 90 L.Ed.2d 69 (1986), can be summarily answered. The prosecutor used peremptory challenges to eliminate two black potential jurors. When asked by the court to explain, the prosecutor replied that one potential juror had met one of the defendants at a party in Waterloo and the other potential juror was known to have used an alias. Given these reasons for eliminating these potential jurors from the panel, we conclude that Leon's argument is without merit. *See United States v. Prine*, 909 F.2d 1109, 1113 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991). The prosecutor's explanations of her use of peremptory challenges were clear, specific, and racially neutral. That is all that is required.

■ Leon next argues that he was not tried within the time period prescribed by the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* and that his constitutional right to a speedy trial under the sixth amendment was violated. This is not so. In calculating the 70–day limit between a defendant's first appearance and the trial, the Act excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). Leon's co-defendants filed a variety of motions before trial, which delay is excludable from the 70–day time limit under 18 U.S.C. § 3161(h)(1)(F). Motions filed by one defendant in a multi-defendant case count as motions filed by all of the defendants, and the reasonable time taken to determine those motions will count as excludable time for all defendants. *United States v. Fogarty*, 692 F.2d 542, 546 (8th Cir.1982), *cert. denied*, 460 U.S. 1040, 103 S.Ct. 1434, 75 L.Ed.2d 792 (1983). We agree with the district court that any delay caused in this particular case was due in fact to the codefendants' various motions before trial and was reasonable.

Leon argues that the district court misapplied the Sentencing Guidelines in three ways: by inflating of the quantity of drugs taken into account in assessing relevant conduct, by refusing to lower Leon's criminal history category, and by assessing a four-level increase because he was a leader or organizer of the conspiracy.

■ Leon contests the inclusion of the three ounces of methamphetamine which Linderman testified had been purchased by Leon from Wayne Burns. He also contests the inclusion of the three quarters of an ounce of cocaine given to Roxanne Steen on Christmas. Linderman testified that Burns was a steady source for Leon. In the middle of December, according to Linderman, Burns promised his last three ounces of methamphetamine to Linderman. When Linderman attempted to purchase the drugs, Burns explained that Leon had already been there and Burns no longer had the three ounces. Soon after, Linderman bought three-fourths of an ounce of methamphetamine from Leon. On the basis of this testimony, the district court added three ounces of methamphetamine to the total amount of drugs for which Leon was responsible. Leon argues that this evidence is insufficient to support the inclusion of the additional three ounces.

We agree with the district court that the testimony supports the reasonable inference that Burns had sold the three ounces to Leon, who then sold part of that to Linderman. This circumstantial evidence is sufficient to establish that Leon was responsible for the purchase of three ounces of methamphetamine. *See United States v. Mann*, 877 F.2d 688, 690 (8th Cir.1989).

■ As for the cocaine given to Roxanne Steen, testimony showed that this gift was intended to foster the relationship between the Steens and the Fullers. The district court found that Leon obtained that cocaine from Wayne Burns and that that link was in furtherance of the conspiracy. This was not error. We agree with the district court that the business practice of keeping valued customers happy with Christmas gifts was part of the ongoing drug conspiracy and that the quantity of cocaine was therefore appropriately included in assessing Leon's culpability. The district court was correct in considering these acts as "part of the same course of conduct or

common scheme or plan as the offense of conviction" under Guidelines § 1B1.3(a)(2).

█ Leon contends that his criminal history category over-represents his past criminal behavior because of the inclusion of two 1982 Operation of a Motor Vehicle While Intoxicated violations. As pointed out by Guidelines § 4A1.2(c), however, these are not minor traffic infractions. The district court's refusal to depart downward from the guideline range is non-reviewable. *United States v. Yerks*, 918 F.2d 1371, 1376 (8th Cir.1990).

█ Leon asserts that the district court erred in increasing his offense level under Guidelines § 3B1.1(a) because he was a leader in the conspiracy. Whether Leon played a leadership or organizing role in the drug conspiracy within the meaning of section 3B1.1 was a fact question for the district judge to resolve. *United States v. Collar*, 904 F.2d 441, 442 (8th Cir.1990). We agree with the district court that a drug distributor does not have to be the main supplier in a geographical area in order to adjust the offense level upward under section 3B1.1. Leon directed the distribution of drugs through David to Cindy Straight and the Steens; organized two co-conspirators, Amo and Milius, to manufacture methamphetamine; and coordinated the sale of drugs through Wayne Burns. The district court found that Leon was the center of the scheme and that he had organized at least five people to produce and distribute methamphetamine. We accept the district court's findings of fact under the Guidelines unless clearly erroneous, 18 U.S.C. § 3742(e), and we conclude that the four-level offense adjustment increase was warranted.

## III.

█ David argues that there was insufficient credible evidence to support his conviction and that the district court erred in denying his motion for judgment of acquittal. He alleges that the witnesses against him were not credible because they were paid police informants, drug users, and drug dealers. Furthermore, he points out, the tape-recorded telephone conversations between Steve Steen and himself are of such poor quality that they were not credible evidence.

Questions of credibility are for the jury. In reviewing a conviction for sufficiency of the evidence, we examine the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences that may logically be drawn from the evidence. *Yerks*, 918 F.2d at 1374. We may overturn the jury's verdict "only if the evidence so viewed is such that a reasonable-minded jury *must* have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense." *Id.* (quoting *United States v. Noibi*, 780 F.2d 1419, 1421 (8th Cir.1986) (emphasis in original)).

The witnesses against the Fullers were thoroughly cross-examined regarding their bargains with the government, their backgrounds in drug abuse, and on the other characteristics bearing on their credibility. The stories presented corroborated each other, exposing both of the Fullers as conspirators in the distribution of methamphetamine, and we can not say that the jury could not have decided the way it did.

█ David also argues that the district court erred by overruling his motion for mistrial after the prosecutor improperly spoke with a witness during a recess at trial. Roxanne Steen, a main prosecution witness, appeared quite shaken after cross-examination, and the prosecutor spoke with her during a short recess in an attempt to calm her. We agree with the district court that the prosecutor's conduct did not amount to misconduct and that this brief conversation did not deny David a fair trial.

David's argument that the conspiracy count against him should be dismissed is without merit.

The judgments and sentences of the district court are affirmed.