UNITED STATES of America, Appellee,

v.

Robert E. SUPPENBACH, also known as Decoder Bob, Appellant.

No. 92–3698.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1993.

Decided July 26, 1993.

Rehearing Denied Aug. 25, 1993.

Robert G. Duncan, Kansas City, MO, argued, for appellant.

Carla B. Oppenheimer, Kansas City, MO, argued (Jean Paul Bradshaw II and Carla B. Oppenheimer, on the brief), for appellee.

Before WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and STOHR,* District Judge.

WOLLMAN, Circuit Judge.

Robert E. Suppenbach appeals from his conviction for conspiring to unlawfully modify and distribute electronic devices to be used for the unauthorized decryption of satellite cable television programming, in violation of 18 U.S.C. § 371 and 47 U.S.C. § 605(e)(4). He argues that his conviction is not supported by sufficient evidence and that the district court's [1] supplemental jury instructions denied him a fair trial. We affirm.

## I.

In 1986, major cable television programmers began scrambling their satellite transmissions in order to thwart unauthorized reception of their programming. Consequently, to receive scrambled programming, satellite dish owners must now purchase a transmission descrambler, or decoder, and then pay a subscription fee to have descrambled transmissions sent to their decoders. Since the introduction of program scrambling, pirates have begun to illegally modify decoders so that dish owners can receive scrambled programming without paying a subscription fee.

In 1989, the FBI began investigating allegations that satellite dish vendors in the Kansas City, Missouri, area were selling illegally modified decoders. The investigation focused on John Weber, owner of Future Vision Satellite, and Larry Kueser, owner of Centek. The FBI learned that Bob Suppenbach, also known as Decoder Bob, Computer Bob, and Chip Bob, was the individual illegally modifying decoders for Weber and Kueser.

Suppenbach was indicted pursuant to a three-count indictment. Count I charged that Suppenbach had conspired to unlawfully modify and distribute decoders to be used for the unauthorized decryption of satellite cable television programming, in violation of 18 U.S.C. § 371 and 47 U.S.C. § 605(e)(4); Count II charged that Suppenbach had modified a Panasonic 4500 Descrambler, in violation of 47 U.S.C. § 605(e)(4); Count III charged that Suppenbach had modified a Channel Master Module, in violation of 47 U.S.C. § 605(e)(4).

At trial, the government presented evidence that Suppenbach had illegally modified decoders for John Weber and his company, Future Vision. More specifically, the government presented evidence that Suppenbach had illegally modified a Panasonic 4500 Descrambler, which Future Vision sold to James Saunders in November 1989, and that he had modified a Channel Master Module, which Future Vision sold to Jim Stubbs in March 1989. The modification of these two decoders constituted the basis for the substantive offenses charged in Counts II and III, respectively. Additionally, the government presented evidence that Suppenbach had also modified decoders for Larry Kueser and his company, Centek.

The jury found Suppenbach guilty on Count I, the conspiracy charge, and not guilty on Counts II and III, the substantive offense charges. The district court sentenced Suppenbach to four months' imprisonment, to be followed by three years of supervised release, and ordered him to pay $5,000 in restitution.

---

* The HONORABLE DONALD J. STOHR, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Howard F. Sachs, Senior United States District Judge for the Western District of Missouri.

## II.

Suppenbach first argues that his conspiracy conviction is not supported by sufficient evidence. The district court instructed the jury that to convict Suppenbach of conspiracy, the jury had to find that he had voluntarily agreed with a person or persons to commit a criminal offense (to illegally modify decoders) and that a person who had joined the agreement knowingly did one or more of the acts charged in the indictment. *See* Jury Instruction E. The only acts charged in the indictment were the acts alleged in Counts II and III. As stated above, these counts charged that Suppenbach had modified a Panasonic 4500 Descrambler and a Channel Master Module. Accordingly, Suppenbach argues, and the government agrees, that to convict Suppenbach of conspiracy the jury had to find that he had modified one of the decoders charged in Counts II and III. Suppenbach argues that because the jury acquitted him on Counts II and III, it found that he had not modified either of the decoders and therefore could not have properly convicted him of conspiracy.

■ Although Suppenbach attempts to characterize his argument as a sufficiency of the evidence claim, his argument is actually an inconsistent verdict claim. It is understandable that Suppenbach would attempt to characterize his claim as other than an inconsistent verdict claim, because it is well settled that "[c]onsistency in the verdict is not necessary." *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). A defendant convicted by a jury on one count cannot attack that conviction because it is inconsistent with the jury's verdict of acquittal on another count. *United States v. Powell*, 469 U.S. 57, 58, 105 S.Ct. 471, 473, 83 L.Ed.2d 461 (1984) (citing *Dunn*).

Indeed, in *United States v. Townsley*, we rejected substantially the same argument that Suppenbach makes here. 843 F.2d 1070, 1086 (8th Cir.1988), *cert. dismissed*, — U.S. —, 111 S.Ct. 1406, 113 L.Ed.2d 461 (1991). We refused to overturn a conviction for conspiracy to obstruct justice even though the defendant had been acquitted of obstruction of justice. *Id.* (citing *United States v. Shigemura*, 682 F.2d 699, 705 n. 11

(8th Cir.1982), *cert. denied*, 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983)). *See also United States v. Williams*, 923 F.2d 115, 116 (8th Cir.1991) (refusing to set aside inconsistent verdicts where the defendants were convicted of attempt to manufacture methamphetamine but acquitted of conspiracy to manufacture methamphetamine).

■ As the Supreme Court recognized in *Powell*, where a jury has reached inconsistent verdicts, "it is unclear whose ox has been gored." *Powell*, 469 U.S. at 65, 105 S.Ct. at 476. It is possible that the jury found that Suppenbach had modified one or both of the decoders and thus properly convicted him of conspiracy, and then "through mistake, compromise, or lenity," arrived at inconsistent conclusions on the substantive charges. *Id.* As Justice Holmes succinctly stated in *Dunn:*

> The most that can be said in [inconsistent verdict] cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.
>
> That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.

*Dunn*, 284 U.S. at 393–94, 52 S.Ct. at 190–91 (citation omitted).

■ Although we will not overturn Suppenbach's conspiracy conviction because it is inconsistent with his acquittals, he is entitled to an independent review of the sufficiency of the evidence supporting his conviction. *Powell*, 469 U.S. at 67, 105 S.Ct. at 477. Sufficiency-of-the-evidence review is independent of the jury's determination that evidence on other counts was insufficient. *Id.* In reviewing the sufficiency of the evidence to support a conviction, "we examine the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences that may

logically be drawn from the evidence." *United States v. Fuller*, 942 F.2d 454, 458 (8th Cir.1991) (citing *United States v. Yerks*, 918 F.2d 1371, 1374 (8th Cir.1990)), *cert. denied*, —— U.S. ——, 112 S.Ct. 315, 116 L.Ed.2d 257 (1991) *and* —— U.S. ——, 112 S.Ct. 890, 116 L.Ed.2d 793 (1992). We will reverse the jury's verdict " 'only if the evidence so viewed is such that a reasonable-minded jury must have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense.' " *Id.* (quoting *Yerks*, 918 F.2d at 1374).

■ To convict Suppenbach of conspiracy, the jury had to find that he had agreed with a person or persons to illegally modify decoders, and that in furtherance of this agreement he had modified one of the decoders charged in Counts II and III. The evidence clearly established that the decoders charged in Counts II and III had been modified for and sold by Weber through Future Vision. Thus, to convict Suppenbach of conspiracy, it was necessary for the jury to find that Suppenbach had agreed with Weber to modify decoders and that he had modified one of the decoders charged in the indictment. After reviewing the record, we find ample evidence supporting both propositions.

The evidence established that Suppenbach had agreed with Weber to illegally modify decoders. Weber testified that he sold illegally modified satellite decoders through Future Vision from 1988 to 1989. According to Weber, Suppenbach did all of the illegal modifications for Future Vision. Suppenbach modified thirty to fifty decoders, receiving between $125 to $250 per modification. Whenever Weber needed decoders modified, he would contact Suppenbach. Weber would then take the unmodified decoders to Suppenbach's home, or Suppenbach would pick them up at Weber's office. After the decoders had been modified, Suppenbach either delivered them to Weber, or Weber would pick them up at Suppenbach's home. Two Future Vision employees corroborated Weber's testimony, stating that Suppenbach was the only person who had modified decoders for Future Vision.

The evidence also established that Suppenbach had modified one of the decoders charged in Counts II and III. As recounted above, Weber and two Future Vision employees testified that Suppenbach was the only person who modified decoders for Future Vision. The evidence established that Future Vision sold the illegally modified Channel Master Module to Jim Stubbs in March 1989 and the modified Panasonic 4500 Descrambler to James Saunders in November 1989. Stubbs and Saunders confirmed that they had purchased decoders that allowed them to receive cable programming for which they had not paid. Additionally, Brant Candelore, an electrical engineer, testified that Stubbs' and Saunders' decoders had in fact been illegally modified.

Additionally, Kueser's testimony corroborated that Suppenbach had conspired with Weber. According to Kueser, he sold illegally modified decoders through Centek in 1988 and 1989, and he too had hired Suppenbach to do illegal modifications. When he needed decoders modified, Kueser would contact Suppenbach; then, Centek would either deliver the decoders to Suppenbach, or Suppenbach would pick them up.

■ Having found that the record contains sufficient evidence to support Suppenbach's conspiracy conviction, we turn to his argument that the district court's supplemental instructions denied him a fair trial.

In its closing argument, the government argued that to prove the conspiracy charge it had to show that Suppenbach had conspired with Weber. The government stated that the conspiracy at issue was between Suppenbach and Weber and did not involve Kueser. It argued that evidence that Suppenbach had conspired with Kueser merely added to the government's case.

During its deliberations, the jury sent two notes to the district court. In the first note, the jury asked, among other things, "Is anything having to do with Syntex [sic] actually involved in the charges against Mr. Suppenbach?" The court responded that "[t]he government does not contend that Syntex [sic] was involved in the charges in Counts 2 and 3." The court stated further that "[t]he jury should deal with Count 1 in accordance with

the evidence, the instructions, and the argument." In the second note, the jury asked, "Is Count 1 the conspiracy between John Webber [sic] and Bob Suppenbach only or is Syntech [sic] involved also on Count 1?" The court answered that "[t]he conspiracy charge does not name co-conspirators and the instructions do not confine jury consideration to particular companies or individuals. It will be the jury's responsibility to determine from the evidence if there was a conspiracy and, if so, what companies or individuals were involved."

Suppenbach argues that the court's supplemental instructions were improper because they implied that Centek could have been involved in the conspiracy. He contends that this implication was improper in the light of the government's argument that the conspiracy at issue was between Suppenbach and Weber and did not involve Kueser and his company Centek.

" 'The response to a jury request for supplemental instructions is a matter within the sound discretion of the district court.' " *United States v. Bartley*, 855 F.2d 547, 551 (1988) (quoting *United States v. White*, 794 F.2d 367, 370 (8th Cir.1986)). "A trial judge must be painstakingly impartial any time he communicates with the jury during deliberations. He must insure that any supplemental instructions are accurate, clear, neutral, and non-prejudicial." *Id.*

We find that the court's supplemental instructions were accurate and appropriate. The court properly told the jury that Centek was not involved in Counts II and III. As noted above, the government's evidence clearly established that Counts II and III involved only decoders that Suppenbach had modified for Future Vision and which Future Vision had sold. Under no view of the evidence could Centek have been involved in Counts II or III.

■ Likewise, the court properly instructed the jury that it would have to be guided by the evidence, instructions, and arguments in determining whether Centek was involved in Count I. The court appropriately refused to tell the jury that Centek was not involved in the conspiracy. As discussed earlier, taken together, the indictment, the evidence,

and the instructions required the government to prove that Suppenbach had conspired with Weber to modify decoders. Although the indictment and the instructions required the jury to find that Suppenbach and Weber had conspired, they did not foreclose a finding that Kueser and Centek were also involved in the conspiracy. As the court told the jury, the indictment did not name coconspirators and the instructions did not limit the jury's consideration only to certain individuals or companies. The court properly told the jury that it would have to determine from the evidence if there was a conspiracy and, if so, who was involved.

As Suppenbach emphasizes, the government argued that Kueser and Centek were not involved in the conspiracy. The government's closing argument, however, did not render the court's supplemental instructions improper, for the argument merely reflected the government's interpretation of the evidence. Certainly, a district court need not tell the jury to interpret the evidence in the manner urged by the government. Instead, the court's instruction must be neutral, which it was in this case. Rather than telling the jury that Centek was not involved in the conspiracy, the court impartially instructed the jury to determine for itself from the evidence what companies and individuals were involved.

The conviction is affirmed.