19 F.3d 24
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
UNITED STATES OF AMERICA, Appellee,
v.
Gregorio DUARTE, Appellant.
 No. 93-3108.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: January 31, 1994.
Filed: March 10, 1994.
 
 Before FAGG, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Gregorio Duarte appeals his conviction and the sentence imposed by the district court[1]. We affirm.
 
 
 2
 In November 1992, a federal grand jury charged Duarte, and others, with conspiracy to distribute marijuana in violation of 21 U.S.C. Sec. 846 (Count 2), knowing and intentional distribution of marijuana in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2 (Count 3), and use of a firearm in connection with Counts 2 and 3 in violation of 18 U.S.C. Sec. 924(c)(1) (Count 4). Duarte pleaded not guilty.
 
 
 3
 At trial, David Dale Lohner, a co-conspirator, testified that in November 1991 he drove his van, with Lenny Poffenberger and Leon McCombs, to Tucson, Arizona, and picked up 400 to 450 pounds of marijuana from "Ramon" and "Carlos." He stated that Ramon and Carlos took his van and returned it loaded with marijuana. Two men were with Ramon and Carlos-one named Jesus (later identified as Jesus Hector Ortiz) and another Mexican, name unknown. Ramon told Lohner that the two men were going to follow him to Iowa "to keep an eye on the weed." Lohner testified that the two men followed the van back to Iowa in a white Thunderbird, that McCombs was "asked" to ride in the T-Bird to make sure the van did not disappear, that Ortiz carried a gun in a holster under his coat, and that once the marijuana made it safely to Iowa, both men left town. Penny Lohner, David Lohner's wife and a co-conspirator, identified Duarte as the unnamed Mexican who accompanied her husband and McCombs to Iowa.
 
 
 4
 Lenny Poffenberger, another co-conspirator, testified that he went to Tucson with Lohner and McCombs in November 1991, that he drove Lohner's van, and that McCombs rode back to Iowa in a white T-Bird with Ortiz and Duarte. He identified Government's Exhibit 9 as a piece of paper that Duarte possessed which indicated the amount of marijuana in each bale loaded into the van.
 
 
 5
 McCombs testified that he met Duarte in Tucson when he went with Lohner and Poffenberger to purchase marijuana. He further testified that Ortiz told him if Lohner ran off with the marijuana, he (McCombs) would be in trouble. McCombs identified Government's Exhibit 9 as the list with "the weights of the marijuana."
 
 
 6
 Kerry Northway, an Iowa state trooper, testified he arrested Ortiz and Duarte after he observed the car they were in, a white T-Bird, being driven in an erratic manner. In conjunction with the arrests, the car was impounded, and an inventory search revealed a pay-locker key. During questioning, Ortiz informed Northway that the key belonged to a locker at the Des Moines bus station; he gave Northway permission to search the locker. In it, Northway found two bags of clothing, a loaded .9 millimeter Smith & Wesson in one of the bags, and a full box of .9 millimeter ammunition. Northway testified that Duarte told him the gun found in Duarte's bag of clothing belonged to Ortiz, but Duarte was holding it for him; and that Duarte stated he was in Des Moines visiting a friend, but he could not identify the friend. Officer Richard Lee DeJoode, Jr., testified that his "drug dog" sniffed the white T-Bird and indicated narcotics in the trunk area, but officers were unable to locate any drugs in the car, and the dog must have smelled only narcotic residue.
 
 
 7
 Duarte testified that he came to Des Moines with Ortiz-"an acquaintance"- to look for work, that they drove to Des Moines in a car that belonged to the woman he lived with, and that he did not carry any drugs during the trip. Duarte testified that Ortiz said McCombs was his friend. He also testified that he was unable to look for work in Des Moines because he was arrested, that he did not have any money, that Ortiz paid for the locker, and that the gun did not belong to him. On cross-examination, Duarte testified that he did not know Ramon, Carlos, Lohner, or Penny Lohner. He also testified that he told the officer, when questioned after being arrested, that he did not know anything about the gun. He stated that he did not remember ever seeing Government's Exhibit 9 (the list), and that he had never seen numbers like that; that he had never seen the gun; that he had never seen Ortiz with a gun; and that he had never distributed marijuana. The jury found Duarte guilty on all three counts.
 
 
 8
 The presentence report (PSR) indicated a base offense level of 26 for Counts 2 and 3. It recommended a two-level enhancement, pursuant to U.S.S.G. Sec. 3C1.1, comment. (n.3(f)), for "providing materially false information to a Judge" by testifying at trial that he did not know several individuals who had testified they conspired with him to distribute marijuana, and that he did not commit the charged offenses. With a total offense level of 28 and criminal history category of I, the Guidelines range was 78 to 97 months. Count 4 required a mandatory consecutive 60-month term of imprisonment. At sentencing, Duarte argued against the two-level enhancement for obstruction of justice, because after the conviction he agreed to cooperate with the government by "identifying pictures and helping them in their other cases." The court held that "[t]he jury's verdict [was] entirely inconsistent with what the defendant testified. Consequently, the two level adjustment for obstruction is required or at least in my view appropriate." The court sentenced Duarte to 138 months-78 plus 60-to be followed by a four-year term of supervised release.
 
 
 9
 Duarte now argues that there was insufficient evidence to convict him on Counts 2, 3, and 4, and that the district court improperly enhanced his base offense level by two for perjury without making the required findings of fact.
 
 
 10
 When reviewing insufficient-evidence claims, we "must review the evidence in the light most favorable to the government," giving it "the benefit of all reasonable inferences that could be drawn from the evidence." United States v. Buchanan, 985 F.2d 1372, 1376 (8th Cir. 1993). We "will reverse ... only if [we] conclude[ ] that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." Id.
 
 
 11
 As to Count 2, Duarte argues there was no evidence that he "had prior knowledge of the scheme," that "he knew of the presence of the marijuana," or that he "intended to transfer it to anyone." After carefully reviewing the evidence, however, we conclude that a rational jury could have found that Duarte was a co-conspirator. In addition, Duarte does not dispute that Lohner, Ortiz, and Carlos were involved in a conspiracy to distribute marijuana and, " [u]nfortunately for [Duarte,] ... the jury found that sufficient evidence of [Duarte's] participation did exist." Id. "Once a conspiracy has been proved, even slight evidence connecting a defendant to the conspiracy is sufficient to support his conviction." Id.
 
 
 12
 As to Count 3, Duarte argues there was no evidence that he "transferred, produced or showed the marijuana to anyone [or] had any intent or knowledge of same." After considering the evidence as a whole, we conclude that the jury's verdict was not unreasonable. It is well settled that the government may prove essential elements of a crime by direct or circumstantial evidence. See, e.g., United States v. Trevino-Rodriguez, 994 F.2d 533, 536 (8th Cir. 1993). In addition, intent "may be established by circumstantial evidence, including possession of a large quantity of controlled substance." See Buchanan, 985 F.2d at 1377. Viewed in a light most favorable to the government, the evidence supports reasonable inferences that Duarte accompanied Ramon, Carlos, and Ortiz when they returned the van loaded with a large quantity of marijuana; that Ortiz and Duarte followed the van to make sure the marijuana arrived in Iowa; and that Duarte had a notebook containing an inventory of the marijuana in the van.
 
 
 13
 As to Count 4, Duarte argues there was no evidence that the gun found in his clothes bag was used in furtherance of drug trafficking. It is undisputed that the gun was found in Duarte's clothing bag and that he admitted he was holding it for Ortiz. Duarte contends, however, that there was no evidence "connecting the delivery of marijuana with a gun, much less the same gun found later in the locker at the bus depot." Brandishing or discharge of the weapon, however, is not necessary for section 924 to apply; if the gun is present and available, the jury is permitted to infer the defendant's intent to use it " 'had there been "evident need" for the threat or use of force during the deal.' " See United States v. Thomas, 964 F.2d 836, 838 (8th Cir. 1992) (quoted cases omitted), cert. denied, 113 S. Ct. 265 (1992); see also United States v. Michaels, 911 F.2d 131, 132 (8th Cir. 1990) (section 924 requires only that gun's availability facilitated carrying out of drug-trafficking crime), cert. denied, 498 U.S. 1094 (1991).
 
 
 14
 Lohner testified that he believed Ortiz possessed a gun in Tucson; several witnesses testified that Ortiz threatened McCombs's life; it is undisputed that Ortiz was following the van to protect the marijuana, and several witnesses testified that Duarte was also there to protect the drugs; and finally, a gun was found in Duarte's clothing bag. " 'Proof of constructive possession is sufficient to satisfy the element of knowing possession' " under section 924; actual possession of the gun is not required. United States v. Patterson, 886 F.2d 217, 219 (8th Cir. 1989) (quoting United States v. Matra, 841 F.2d 837, 840 (8th Cir. 1988)). As a result, the jury's verdict on Count 4 was not unreasonable.
 
 
 15
 Duarte's final argument is that the court erred in applying the two-level enhancement for obstruction of justice by perjury without making specific findings as to false statements and their materiality. He did not raise this objection at sentencing; therefore, we review for plain error, see United States v. Glasener, 981 F.2d 973, 974-75 (8th Cir. 1992), and we will not reverse unless a gross miscarriage of justice would otherwise result. See United States v. Redlin, 983 F.2d 893, 896 (8th Cir. 1993), cert. denied, 114 S. Ct. 75 (1993).
 
 
 16
 The PSR recommended the two-level enhancement for obstruction of justice because Duarte committed perjury when he testified at trial that he did not know several individuals who had testified that they conspired with him to distribute marijuana, and that he did not commit the charged offense. The district court found that the enhancement was justified. This finding is fully supported by the record and we therefore conclude that the district court's imposition of the two-level enhancement for perjury did not result in plain error or a miscarriage of justice.
 
 
 17
 Accordingly, we affirm the judgment of conviction and the sentence.
 
 
 
 [1]
 The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa